FARGO WOMEN'S HEALTH ORGANI-ZATION, INC., George Miks, M.D., Susan Wicklund, M.D., Jane Bovard, Administrator, and on behalf of the staff of Fargo Women's Health Organization, Inc., and Jane Doe(s), being fictitious names intended to designate present and prospective patients of the Fargo Women's Health Organization, Plaintiffs and Appellees,

v.

LAMBS OF CHRIST, Focus on Fargo, Help and Caring Ministries, Community Praise Center, Jody Clemens, Tim Lindgren, Kathy Beneda Lindgren, Chet Gallagher, Chris Venkelese, Ron Maxon, Operation Rescue, and all other individuals, associations, and organizations whose names or legal identities are otherwise unknown to Plaintiffs at this time, with whom they have conspired and acted in concert with to deprive Plaintiffs of their rights, Defendants,

Darold Larson, Defendant and Appellant.

Civ. No. 920334.

Supreme Court of North Dakota.

July 1, 1993.

Kirschner Law Office, Fargo, for plaintiffs and appellees, argued by William Kirschner. Appearance by Laurie Miller Kirschner.

Darold Larson (argued), pro se.

MESCHKE, Justice.

On review after remand, we affirm a temporary injunction as amended to reinstate a 100–foot protected zone that excludes protestors around an abortion clinic.

In *Fargo Women's Health Organization, Inc. v. Lambs of Christ*, 488 N.W.2d 401 (N.D.1992) (*Lambs I*), we approved a temporary injunction, pending trial, to restrain abortion protestors from using physical obstruction to injure, intimidate, and interfere with persons seeking access to a Fargo clinic for abortion services. We concluded that, "[g]iven the protestors' actions ..., a place restriction may be an appropriate method of regulating the protestors' conduct." *Id.* at 409.

Nevertheless, we lifted one of six restraining clauses that prohibited "going within 100 feet of the property line" of the clinic because we had "no description of the physical layout of the clinic in relation to its property line, the property line in relation to public sidewalks and roads, or the features of the neighborhood." *Id.* at 407, 409. Since we had no way to judge the fit of the place restriction to the circumstances of the case, we remanded, giving the trial court permission to take more evidence and to revise the stricken clause to set the dimensions necessary for a protected zone.

On remand, the clinic moved, with supporting affidavits and a scale drawing of the area, to reinstate the 100–foot protected zone. After receipt of some opposing affidavits for the defendants and after oral arguments, the trial court was persuaded by the affidavit of Fargo police Lieutenant Sanderson that "law enforcement has a need for [this 100–foot] distance to effectively react to the crowds" and "to effectively control the area and maintain peace and order and ... access to the premises." The trial court reinstated the identical clause, with the same exception for two people at a time to "quietly and peacefully picket such facility ...," to restrain protestors from "going within 100 feet of the property line of [the clinic] during such times as they are open for business."

Only one defendant, Darold Larson, appeals. He presents his arguments in this case, *Lambs II*, without the assistance of counsel. He does not contest the affidavit testimony of Lieutenant Sanderson, the dimensions shown in the scale drawing, or the fit of the zone of protection with the public areas surrounding the clinic. Rather, Larson argues that the clinic has "unclean hands," that the court evidenced a "prejudicial bias" for the clinic's affidavits, and that the court exhibited a pattern of prejudice by failing to differentiate adoption counselors and non-rescuers from active protestors and "rescuers" in structuring the injunction.

Ordinarily, a temporary injunction before trial is not reviewable by an interlocutory appeal. *Sargent County Bank v. Wentworth*, 434 N.W.2d 562 (N.D.1989). Consistent with the doctrine of finality, we usually require an acceptable certification under NDRCivP 54(b) before we will consider reviewing an interlocutory order. *Regstad v. Steffes*, 433 N.W.2d 202 (N.D. 1988). However, as cases like *Garrison Memorial Hosp. v. Rayer*, 453 N.W.2d 787 (N.D.1990), *Vorachek v. Citizens State Bank of Lankin*, 461 N.W.2d 580, 584 (N.D.1990), and *Lambs I* illustrate, when "interim relief affects fundamental inter-

ests of the litigants," we may choose to review a temporary injunction.

This temporary injunction, pending trial on the merits, is meant to strike a balance between the free-speech rights of anti-abortion protestors and the constitutional rights of women to obtain abortions. Our remand, and consequently this appeal, was confined to the question of the shape of a place restriction to protect the clinic from misconduct of protestors, considering the surrounding public sidewalks, streets, and neighborhood features. The need was established to at least temporarily restrain the protestors' obstructive conduct, and we approved a place restriction for a protected zone as an "appropriate method of regulating the protestors' conduct." *Lambs I* at 409. That need is not open to re-argument on this appeal. At this stage, only the location and dimensions of the temporary place restriction are relevant.

Larson argues that one defendant's affidavit on remand accused clinic personnel of countering the protestors' obstructive conduct by verbal abuse and by impeding the protestors' "First Amendment communications" with a "ghetto blaster playing demonic music" in a "very loud volume" and with a "lawn mower with the muffler removed to increase the roar of the motor." Larson claims that this demonstrates "unclean hands" by the clinic that should have been considered by the trial court as an equitable defense. He misconceives the scope of the remand and of this appeal. We remanded only to address the shape of a place restriction in the light of the clinic's location and the protestors' misconduct.

Larson argues that, because the trial court chose to believe Lieutenant Sanderson's affidavit about the problems of coping with protestors at the clinic, the trial court was biased and prejudiced. Larson wants us to infer prejudice from the trial court's statement that the "affidavits of the Plaintiffs, ... are unanswered, except to the extent that the affidavits of certain nonparties, but which I will consider anyway, take issue with the credibility of the Plaintiffs' affiants."

■ It is not bias or prejudice for a trial court to give more credence to one side's witnesses than to the opposing side's. That often happens. Moreover, Larson misconstrues the trial court's statement. The affidavits on behalf of the defendants did not really address the remand question about the reasonableness and shape of the place restriction.

Finally, Larson claims that the trial court improperly lumped the activities of adoption counselors and other "non-rescuers" with the misconduct of picketers, "rescuers," and protestors. To illustrate, Larson insists that the temporary injunction adversely affects his adoption-counseling business, where he stands "to make $5,000 or $10,000 per adoption" if he convinces an abortion seeker to opt for an adoption. Larson argues that the law "does not protect a business from competition or from competitors who urge people not to use its services or to choose an alternative," so long as the competing enterprise "indulges in no threat, coercion, ... or other harassing methods." There are more problems with this argument than the obvious one that it is unsupported by evidence.

■ The preliminary injunction was approved to restrain abortion protestors from using physically obstructive conduct to injure, intimidate, and interfere with persons seeking access to the clinic for abortion services. Coercive, threatening, and harassing methods were proven. It is fundamental that coercive interference with a lawful business is unlawful. *See* 54 Am-Jur2d *Monopolies, Restraints of Trade, and Unfair Trade Practices* § 450 (1971). Adoption counselors and other legitimate businesses remain free to communicate with potential clients by usual and legitimate methods of promoting a business.

■ We conclude that the 100–foot protected zone was narrowly tailored to balance free-speech rights, abortion rights, and the public interest in peace and order. We affirm the amended temporary injunction.

VANDE WALLE, C.J., and MESCHKE, SANDSTROM, NEUMANN and LEVINE, JJ., concur.