**Walter E. MITCHELL, Plaintiff and Appellee,**

v.

**Art SANBORN, Defendant and Appellant.**

**Civ. No. 950020.**

Supreme Court of North Dakota.

Aug. 29, 1995.

Kerry S. Rosenquist (argued), Arnason Law Office, Grand Forks, for plaintiff and appellee.

Ronald F. Fischer (argued), Pearson, Christensen, Larivee & Fischer, Grand Forks, and Duane H. Ilvedson, Nilles, Hansen & Davies, Ltd., Fargo, for defendant and appellant.

MESCHKE, Justice.

Art Sanborn appeals from a judgment, certified as final, holding him liable in a personal injury action brought by Walter E. Mitchell. We treat Sanborn's appeal as a petition to exercise our supervisory jurisdiction, and we direct the trial court to dismiss Mitchell's action.

In May 1991, Mitchell was injured while working as a police officer for the Grand Forks Police Department. Mitchell was standing next to a secretary's desk at the police station when Sanborn, a fellow officer who was also on duty, approached Mitchell from behind and bumped his knees out from under him. Mitchell submitted a claim to the North Dakota Workers Compensation Bureau, and he was awarded benefits for "an injury by accident arising out of and in the course of employment."

Mitchell then sued Sanborn, alleging that, when the incident occurred, Sanborn was engaged in "horseplay" outside the scope of his employment as a police officer. Mitchell sought damages in excess of $50,000, asserting that he sustained serious injuries, including two major surgeries, as a result of the incident. Mitchell and Sanborn agreed that, regardless of whether Sanborn's act was accidental, as asserted by Sanborn, or intentional, as alleged by Mitchell, Sanborn did not intend to injure Mitchell.

Sanborn moved to dismiss Mitchell's lawsuit, contending that, as a matter of law, it was barred by the exclusive-remedy provisions of the Workers Compensation Act, NDCC Title 65-01, and by the doctrines of res judicata and election of remedies. The trial court denied Sanborn's motion, ruling that the exclusive-remedy provisions and public policy did not, as a matter of law,

protect a co-employee from liability for acts of alleged horseplay.

At the request of both parties, the court bifurcated the issues of liability and damages. After a trial without a jury on liability, the court found that Sanborn had intentionally pushed Mitchell's knees out from under him and that the act constituted negligence. The court also found that, in committing the act, Sanborn did not intend to harm or to injure Mitchell and that, when the horseplay occurred, Sanborn was engaged in a substantial deviation from the course of his employment. The court concluded that the exclusive-remedy provisions did not protect Sanborn from tort liability for his conduct and that Mitchell was entitled to proceed to trial on damages. At the request of both parties, the court ruled that there was "no just reason for delay in the entry of judgment on liability" under NDRCivP 54(b), and a final judgment on the question of liability was entered. Sanborn appealed.

■ On our own initiative, we first consider our jurisdiction to decide the liability question. An appeal from an intermediate order must meet two separate and distinct jurisdictional requirements. First, the order must satisfy one of the enumerated criteria under NDCC 28–27–02. *Gast Const. Co., Inc. v. Brighton Partnership*, 422 N.W.2d 389 (N.D.1988). Second, the trial court must certify the appeal under NDRCivP 54(b). *Gast Const.* Here, the jurisdictional problem is the propriety of the Rule 54(b) certification.

Rule 54(b) authorizes entry of a final judgment adjudicating fewer than all claims if the trial court makes "an express determination that there is no just reason for delay and ... an express direction for the entry of judgment." In *Gessner v. City of Minot*, 529 N.W.2d 868 (N.D.1995), we recently reiterated that Rule 54(b) preserves our longstanding policy against piecemeal appeals.

■ Although the trial court entered a Rule 54(b) certification, we are not bound by its decision, and we will review the certification to determine if the court abused its discretion. *E.g., Gessner.* The purpose of our review is to ascertain whether the cir-

cumstances establish the "infrequent harsh case" warranting the extraordinary remedy of an otherwise interlocutory appeal. *E.g., Gissel v. Kenmare Township,* 479 N.W.2d 876, 877 (N.D.1992). Rule 54(b) certification may not be used to secure an advisory opinion, and a party seeking certification must affirmatively demonstrate that prejudice or hardship will result if certification is denied. *E.g., Bulman v. Hulstrand Const. Co., Inc.,* 503 N.W.2d 240 (N.D.1993). To demonstrate unusual and compelling circumstances for Rule 54(b) certification, there must be out-of-the-ordinary circumstances or cognizable unusual hardships that will arise if appellate review is deferred. *E.g., Janavaras v. Nat'l Farmers Union Property & Casualty Co.,* 449 N.W.2d 578 (N.D.1989). Our recent cases illustrate that out-of-the-ordinary circumstances or cognizable unusual hardships justifying a Rule 54(b) certification are rare. *Vanover v. Kansas City Life Ins. Co.,* 535 N.W.2d 424 (N.D.1995); *Ingalls v. Glass Unlimited, Inc.,* 529 N.W.2d 872 (N.D.1995); *Gessner; Bulman; Janavaras; Club Broadway, Inc. v. Broadway Park,* 443 N.W.2d 919 (N.D.1989); *Peterson v. Zerr,* 443 N.W.2d 293 (N.D.1989). This record does not affirmatively establish the requisite out-of-the-ordinary circumstances or undue hardships for Rule 54(b) certification.

The parties stipulated:

4. The issues on liability involve, among other things, a significant question whether an employee who injures a fellow employee in the workplace, through an alleged act of "horseplay", may be sued for damages where the injured employee has applied for and received worker's compensation benefits for the subject injury. This precise question has been finally decided by the trial court following the bifurcated trial, and is a question that has not been directly addressed by the North Dakota Supreme Court.

5. A trial on the issues of damages will be very expensive and will involve, among other things, numerous depositions of physicians, independent medical exams, discovery depositions and other expense and will likely result in a four or five day trial. A trial on the issues of damages would create an economic hardship for both the plaintiff and defendant and would be a waste of judicial time when the issues of liability are significant, and ripe for review by the Supreme Court.

6. The liability issues will never be moot, do not involve any constitutional issues, and do not seek advisory opinions from the North Dakota Supreme Court.

We may agree with the parties that the issues involved in this appeal may never be moot, because the liability issue has been completely resolved and there is no possibility that any third party could absolve Sanborn from liability. *Compare Ingalls; Gessner; Bulman; Janavaras.* As the case is now postured, only damages remains to be decided. Although the parties stipulated that the trial of damages "will be very expensive" and will result in an "economic hardship," this record includes only general statements about expected expenses and does not contain specific proof about the extent of economic hardship. On this record, we decline to say that this case presents the "infrequent harsh case" warranting the extraordinary remedy of an interlocutory appeal, and we would ordinarily dismiss this appeal.

However, we also recognize that we may, in our discretion, exercise our supervisory jurisdiction if the requirements of Rule 54(b) have not been met. *Central Power Electric Co-op., Inc. v. C–K, Inc.,* 512 N.W.2d 711 (N.D.1994); *B.H. v. K.D.,* 506 N.W.2d 368 (N.D.1993); *Fargo Women's Health Organization, Inc. v. Lambs of Christ,* 488 N.W.2d 401 (N.D.1992), *appeal after remand,* 502 N.W.2d 536 (N.D.1993); *Vorachek v. Citizens State Bank of Lankin,* 461 N.W.2d 580 (N.D.1990); *Thompson v. Goetz,* 455 N.W.2d 580 (N.D.1990); *Garrison Memorial Hospital v. Rayer,* 453 N.W.2d 787 (N.D.1990). If the result of denying immediate appellate review is so prejudicial to create a substantial injustice, our supervisory jurisdiction acts as a "safety net" for the restrictive use of Rule 54(b). *Central Power Electric,* 512 N.W.2d at 717 (Chief Justice VandeWalle, concurring). We extend that "safety net" to this case.

Our discretionary authority to exercise our supervisory jurisdiction derives

from Article VI, Section 2, of the North Dakota Constitution. *North Dakota Commission on Medical Competency v. Racek,* 527 N.W.2d 262 (N.D.1995). We exercise our supervisory jurisdiction rarely and cautiously to rectify errors or prevent injustice in extraordinary cases when no other adequate alternative remedy exists. *E.g., Racek.* We have exercised our supervisory jurisdiction to consider the constitutionality of statutes, *Rayer; see Central Power Electric,* the fundamental interests of litigants, *Racek; B.H.; Lambs of Christ; see Goetz,* and other important public interests. *Zahn v. Graff,* 530 N.W.2d 645 (N.D.1995); *City of Fargo v. Dawson,* 466 N.W.2d 584 (N.D.1991); *Odden v. O'Keefe,* 450 N.W.2d 707 (N.D.1990). Despite the inadequate record for a Rule 54(b) certification, this case embodies important public and private interests in the significance of the exclusive-remedy directives of the Workers Compensation Act amid allegations of a co-employee's horseplay. These factors, coupled with the certainty of liability against only Sanborn and the reasonableness of the suggestion that expensive and extensive medical discovery will be necessary before trial on damages,[1] constrain us to exercise our supervisory jurisdiction and consider the merits of the liability issue.

1. At trial of the liability issue, Mitchell testified that he had seen more than ten different doctors for treatment for his injury. Also, at the conclusion of the liability trial, the parties represented to the trial court that they were not ready for trial of damages because they had not completed discovery.

2. NDCC 65–01–01 says

*Purposes of compensation law—Police power.* The state of North Dakota, exercising its police and sovereign powers, declares that the prosperity of the state depends in a large measure upon the well-being of its wage workers, and, hence, for workers injured in hazardous employments, and for their families and dependents, sure and certain relief is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding, or compensation, except as otherwise provided in this title, *and to that end, all civil actions and civil claims for relief for such personal injuries and all jurisdiction of the courts of the state over such causes are abolished except as is otherwise provided in this title.*
(Emphasis added). NDCC 65–01–08 says

Sanborn asserts the exclusive-remedy directives of the Workers Compensation Act, NDCC 65–01–01 and 65–01–08,[2] preclude Mitchell from suing a co-employee for injuries incurred during the co-employee's act of horseplay. Mitchell responds that NDCC 65–01–09 [3] authorizes a lawsuit against a co-employee if the co-employee's conduct constitutes a substantial deviation from the course of employment, thereby transforming the co-employee into a third-party tortfeasor.

The Workers Compensation Act generally provides the exclusive remedy for an employee who suffers a compensable injury as a result of an accident arising out of and in the course of that employee's employment. NDCC 65–01–01; 65–01–02(9) (previously 65–01–02(8)); 65–01–08; 65–05–06. *Stuhlmiller v. Nodak Mutual Ins. Co.,* 475 N.W.2d 136 (N.D.1991); *Barry v. Baker Elec. Co-op, Inc.,* 354 N.W.2d 666 (N.D.1984); *Schlenk v. Aerial Contractors, Inc.,* 268 N.W.2d 466 (N.D.1978). Still, NDCC 65–01–09 authorizes an injured employee to sue third persons for injuries "sustained under circumstances creating in some person other than the fund a legal liability to pay damages in respect thereto." Under the Act, an employee may sue a third person, but not a co-employee, for injuries arising out of and in the course of the employee's employment.

*Contributing employer relieved from liability for injury to employee.* Where a local or out-of-state employer has secured the payment of compensation to his employees by contributing premiums to the fund, *the employee,* and the parents of a minor employee, or the representatives or beneficiaries of either, *have no claim for relief against such contributing employer or against any agent, servant, or other employee of such employer for damages for personal injuries, but shall look solely to the fund for compensation.*
(Emphasis added).

3. NDCC 65–01–09 says, in part:

*Injury through negligence of third person—Option of employee—Fund subrogated when claim filed.* When an injury or death for which compensation is payable under provisions of this title shall have been sustained under circumstances creating in some person other than the fund a legal liability to pay damages in respect thereto, the injured employee, or the employee's dependents may claim compensation under this title and proceed at law to recover damages against such other person.

# 684

Here, the question is whether the underlying factual circumstances transform a co-employee, Sanborn, into a third-party tortfeasor.

A prominent scholar on workers compensation, Professor Larson, teaches that co-employees retain their status as co-employees and their immunity from tort liability so long as they are acting in the course of their employment. 2A Larson, *Workmen's Compensation Law* § 72.23 (1995). According to Professor Larson, the "most satisfactory test" to determine course of employment for purposes of co-employee immunity is the same course-of-employment test used to determine basic compensation coverage. *Id.* Under that standard, in determining co-employee immunity, the test is whether the negligent co-employee would have been entitled to receive workers compensation benefits if that co-employee had been injured in the same incident. *Id.* We apply Larson's formulation to this case.

For purposes of receiving benefits, an employee's injury arises out of and in the course of employment if it " 'occurs within the period of employment at a place where the employee may reasonably be and while he was engaged in performing the duties of his contract or is engaged in something incident thereto and contemplated thereby.' " *Westman v. North Dakota Workers Comp. Bureau*, 459 N.W.2d 540, 545 (N.D.1990),

*citing Welch v. North Dakota Workmen's Compensation Bureau*, 75 N.D. 608, 31 N.W.2d 498, 502 (1948).[4] Although we have considered compensability in the context of victims of traditional workplace accidents, we have not previously considered compensability for a victim or an instigator of horseplay.

Larson advises that an instigator of horseplay is entitled to benefits for injuries incurred during horseplay if, by ordinary course-of-employment standards, the instigator's indulgence in horseplay does not amount to a "substantial deviation" from employment. 1A Larson, *Workmen's Compensation Law* §§ 23.00, 23.20, 23.60 (1995). According to Larson, whether the instigator's indulgence in horseplay is a "substantial deviation" from employment depends on:

(1) the extent and seriousness of the deviation, (2) the completeness of the deviation (i.e., whether it was commingled with the performance of duty or involved an abandonment of duty), (3) the extent to which the practice of horseplay had become an accepted part of the employment, and (4) the extent to which the nature of the employment may be expected to include some such horseplay.

1A Larson § 23.00 at 5–178. Under those criteria, we hold that, as a matter of law, Sanborn's act of horseplay was not a suffi-

---

**4.** Before 1977, our statutes required a compensable injury to arise in the "course of employment." *See Schlenk v. Aerial Contractors, Inc.*, 268 N.W.2d 466, 469 (N.D.1978). In 1977, the Legislature changed the definition of a "compensable injury" to "an injury by accident arising out of and in the course of employment." 1977 N.D.Laws, ch. 579, § 2. The drafter's note explains that change:

One important change proposed in this section is the addition of arising "out of and" in the course of. Presently the law only requires that an injury arise in the course of employment. Our courts have interpreted that to mean that if an employee is at the *place* he is supposed to be at the *time* he is supposed to be there, and engaged in an *activity* whose purpose is related to employment, any injury he receives is compensable.

That interpretation has recently resulted in a court ruling requiring coverage for an employee involved in a fight with another employee because of an incident which had occurred during the prior weekend which bore no rela-

tionship to their work. Presumably all fights which occur in the course of employment, whether related to work or not, are now covered. It is hoped—and it is the intent of the Bureau—that the addition of "out of and" would change that interpretation. Virtually all other states require that an injury arise out of and in the course of employment.

(Emphasis in original). January 19, 1977 Minutes of Industry, Business and Labor Committee of Senate regarding Senate Bill 2158, prepared testimony of Dick Gross, Counsel for Workers Compensation Bureau.

Our earlier decisions recognized a liberal application of "course of employment." *See Welch; Desautel v. Workmen's Compensation Bureau*, 72 N.D. 35, 4 N.W.2d 581 (1942); *Kary v. North Dakota Workmen's Compensation Bureau*, 67 N.D. 334, 272 N.W. 340 (1937); *O'Leary v. North Dakota Workmen's Compensation Bureau*, 62 N.D. 457, 243 N.W. 805 (1932). Although we have not explicitly defined the scope of the 1977 amendment, our statement in *Westman* encompasses injuries "arising out of and in the course of employment."

ciently substantial deviation from his employment.

The parties do not dispute that, when this incident occurred, Sanborn and Mitchell were both on duty at the police station. *Compare Carrillo v. Hamling,* 198 Ill.App.3d 758, 144 Ill.Dec. 843, 556 N.E.2d 310 (1990) (off-duty police officer was not immune from tort liability for allegedly inflicting personal injuries upon on-duty police officer who was responding to domestic disturbance at off-duty officer's home). The momentary time and the employment place of this incident both indicate that Sanborn's act of horseplay was commingled with the performance of duty and was not a sufficiently substantial deviation from his employment.

██ Although this horseplay produced serious consequences, the nature of a horseplay deviation should not be judged with hindsight; instead, the deviation should be measured by the extent of the work-departure regardless of the seriousness of its consequences. 1A Larson, § 23.63. Larson explains:

> [T]he particular act of horseplay is entitled to be judged according to the same standards of extent and duration of deviation that are accepted in other fields, such as resting, seeking personal comfort, or indulging in incidental personal errands. If an employee momentarily walks over to a co-employee to engage in a friendly word or two, this would nowadays be called an insubstantial deviation. If he accompanies this friendly word with a playful jab in the ribs, surely it cannot be said that an entirely new set of principles has come into play. The incident remains a simple human diversion subject to the same tests of extent of departure from the employment as if the playful gesture had been omitted.

At the other extreme, there are cases in which the prankster undertakes a practical joke which necessitates the complete abandonment of the employment and the concentration of all his energies for a substantial part of his working time on the horseplay enterprise. When this abandonment is sufficiently complete and extensive, it can only be treated the same as abandonment of the employment for any other personal purpose, such as an extended personal errand or an intentional four-hour nap.

1A Larson § 23.61 at 5–200—5–201. The extent of Sanborn's work-departure was slight and insubstantial.

Sanborn did not intend to injure Mitchell,[5] and the record reflects that the act of horseplay was a brief, insubstantial, and momentary departure from his employment with no elaborate or advance planning. Sanborn's momentary act of horseplay was commingled with his duties, and the extent and duration of the horseplay did not constitute an abandonment of his work duties. Although Sanborn's act of horseplay produced serious consequences, it was not done with an intent to injure Mitchell, and we decline to magnify the slight departure from his duties into a complete abandonment of employment.

This record also indicates that acts of horseplay are not an uncommon occurrence at the Grand Forks Police Department. Although we do not condone horseplay, given the stressful nature of a police officer's

---

5. In *Schlenk v. Aerial Contractors, Inc.,* 268 N.W.2d 466 (N.D.1978), we discussed a possible intentional-tort exception to the exclusive-remedy rule. In that case, Schlenk, an employee for Aerial Contractors, was injured while operating a wire winder in the course of his employment. Schlenk received workers compensation benefits and later brought a tort action against his employer and co-employees. We held that the exclusive-remedy provisions of the workers compensation act in effect in 1974 did not allow an action for willful or intentional injures inflicted in the course of employment. We said that public policy might allow an exception to the exclusive-remedy rule for acts committed with actual intent to injure. We concluded, however, that the factual circumstances in *Schlenk* did not fit that possible exception.

In *Schreder v. Cities Service Co.,* 336 N.W.2d 641 (N.D.1983), and *Smith v. Vestal,* 494 N.W.2d 370 (N.D.1992), we also discussed that possible exception to the exclusive-remedy rule. However, we again concluded that the factual circumstances in those cases also did not fit that possible exception to the exclusive-remedy rule.

In this case, the parties agree, and the trial court found, that Sanborn's act of "horseplay" was not done with intent to injure Mitchell. Under *Schlenk, Schreder,* and *Vestal,* Mitchell's action against Sanborn does not fit that possible exception to the exclusive-remedy rule.

**686**

duties, we believe that they cannot be expected to attend strictly to their duties every minute they are on duty. Horseplay that counters the tensions and that does not substantially deviate from work can be expected in this type of work environment.

We hold that, as a matter of law, Sanborn's act of horseplay was not a sufficiently substantial deviation from his course of employment so as to transform him from a co-employee to a third-person tortfeasor. We therefore issue a supervisory writ directing the trial court to vacate its order holding Sanborn liable and to enter judgment dismissing Mitchell's action.

VANDE WALLE, C.J., and LEVINE, NEUMANN and SANDSTROM, JJ., concur.