Filed 4/10/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 73

Beverly Fetzer, Appellant

v.

North Dakota Workforce

Safety and Insurance, Appellee

No. 20110251

Appeal from the District Court of McLean County, South Central Judicial District, the Honorable Bruce B. Haskell, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

Dean J. Haas (argued), 521 E. Main, Suite 450, P.O. Box 2056, Bismarck, ND 58502-2056, for appellant.

Jacqueline S. Anderson (argued), Special Assistant Attorney General, 1800 Radisson Tower, 201 5th Street North, P.O. Box 2626, Fargo, ND 58108-2626, for appellee.

Fetzer v. Workforce Safety and Insurance

No. 20110251

Kapsner, Justice.

[¶1] Beverly Fetzer appeals from a district court judgment affirming a Workforce Safety and Insurance (“WSI”) order denying her request for benefits.  Because we conclude claimants must prove a causal connection between their employment and injury, and because Fetzer was unable to prove such a connection, we affirm.

I

[¶2] While walking down a hallway on her employer’s premises and during work hours, Fetzer thought she heard someone call her name.  Turning in response, Fetzer caught her foot and fell, fracturing her left hip and wrist.  No cause of the fall was apparent.  Fetzer filed a claim for workers’ compensation benefits with WSI, and WSI denied her claim.  Fetzer submitted a request for reconsideration.  WSI issued an order consistent with its prior decision, determining Fetzer’s injury “occurred in the course of, but did not arise out of” her employment.  WSI added, “Mere walking, without more, is not an activity that is sufficiently linked to Claimant’s employment so that the injury can be deemed to have arisen from employment.”

[¶3] Fetzer requested a hearing.  Because the parties did not dispute the facts, they waived hearing and entered into a stipulation of facts.  The stipulation noted the floor on which Fetzer fell “was even with no obstruction, slippery spills, fraying or rips in the carpet.”  The stipulation also provided, “The fall is unexplained and not attributable to a risk personal to Fetzer.”  An Administrative Law Judge (“ALJ”) issued findings, conclusions, and an order, stating, “The fact that the fall is unexplained causes a problem of proof for the claimant.  If the fall is unexplained, the claimant cannot show the requisite causation entitling her to benefits.”  The ALJ summarized Fetzer’s argument that with unexplained falls, “the risk should be borne by the employer, rather than the employee.  [Fetzer] urges the application of the ‘positional risk’ doctrine.  That is, if the employee was at work or performing some work-related function when the unexplained fall occurred, the fall is compensable.”  Affirming WSI’s order denying Fetzer’s claim, the ALJ determined that accepting Fetzer’s argument would negate North Dakota’s requirement that claimants prove their work injuries arose out of their employment.  Fetzer appealed the ALJ decision to the district court.  The court affirmed, noting “the ALJ concluded that North Dakota law requires a claimant to prove that her injury arose from her employment and that Fetzer did not do so.  [The ALJ’s] conclusions are in accordance with the law, not with what Fetzer would like it to be.”

II

[¶4] On appeal, Fetzer argues her injury is compensable under the positional risk doctrine, which requires the employer to bear the risk of loss when an employee sustains an unexplained fall at work.  Fetzer contends we previously recognized the positional risk doctrine in a case involving horseplay at work, and she claims our earlier holding should be extended to award compensation to an employee who falls at work without explanation.

[¶5] Under the Administrative Agencies Practice Act, N.D.C.C. ch. 28-32, we exercise limited appellate review of administrative agency decisions.  
Workforce Safety & Ins. v. Auck
, 2010 ND 126, ¶ 8, 785 N.W.2d 186.  An administrative agency decision is affirmed on appeal unless:

1.  The order is not in accordance with the law.

2.  The order is in violation of the constitutional rights of the appellant.

3.  The provisions of this chapter have not been complied with in the proceedings before the agency.

4.  The rules or procedure of the agency have not afforded the appellant a fair hearing.

5.  The findings of fact made by the agency are not supported by a preponderance of the evidence.

6.  The conclusions of law and order of the agency are not supported by its findings of fact.

7.  The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8.  The conclusions of law and order of the agency do not sufficiently explain the agency’s rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28-32-46.  The same deferential standard of review is applied to an ALJ’s factual findings, but questions of law are fully reviewable on appeal.  
Auck
, at ¶ 9.  The sole question in this appeal—whether an unexplained fall at work is a compensable injury under North Dakota statute—is a question of law.

[¶6] Claimants have a burden of proving by a preponderance of the evidence that they suffered a compensable injury, entitling them to workers’ compensation benefits.  N.D.C.C. § 65-01-11; 
Swenson v. Workforce Safety & Ins. Fund
, 2007 ND 149, ¶ 24, 738 N.W.2d 892.  “Compensable injury” is defined as “an injury by accident 
arising out of and in the course of
 hazardous employment which must be established by medical evidence supported by objective medical findings.”  N.D.C.C. § 65-01-02(10) (emphasis added).  Generally, “course of employment” refers to the time, place, and circumstances of the accident resulting in the injury, and “arising out of” refers to a causal connection between the injury and the employment.  
Choukalos v. N.D. Workers’ Comp. Bureau
, 427 N.W.2d 344, 345-46 (N.D. 1988).  “[A] claimant must prove by a preponderance of the evidence that the medical condition for which benefits are sought is causally related to a work injury.”  
Bergum v. N.D. Workforce Safety & Ins.
, 2009 ND 52, ¶ 11, 764 N.W.2d 178.  In this case, the parties dispute whether the “arising out of” element is satisfied.

[¶7] Fetzer claims a majority of states “conclude that the positional risk doctrine supports compensation award[s] to employees injured as a result of a 
neutral risk
—that is, a risk not personal to the claimant.”  To support her position, Fetzer relies heavily on a treatise by Professor Larson, a prominent scholar on workers’ compensation, who describes the positional risk doctrine with the following:

An important and growing number of courts are accepting the full implications of the positional-risk test:  An injury arises out of the employment if it would not have occurred 
but for
 the fact that the conditions and obligations of the employment placed claimant in the position where he was injured.  It is even more common for the test to be approved and used in particular situations.  This theory supports compensation, for example, in . . . situations in which the only connection of the employment with the injury is that its obligations placed the employee in the particular place at the particular time when he or she was injured by some neutral force, meaning by “neutral” neither personal to the claimant nor distinctly associated with the employment.

1 Larson, 
Workers’ Compensation Law
 § 3.05 (2011).  Larson adds, “In a pure unexplained-fall case, there is no way in which an award can be justified as a matter of causation theory except by a recognition that this but-for reasoning satisfies the ‘arising’ requirement.”  1 
id.
 § 7.04[1][a].  Fetzer notes unexplained falls are positional risk cases, arguing “[b]ut for the employment, the claimant would not have been injured at that time and place.”  Fetzer states the “arising out of” element is satisfied under the positional risk doctrine, and she contends “North Dakota law . . . is perfectly consistent with the positional risk principle.”  WSI counters that an employee who endures an unexplained fall at work has not automatically satisfied the “arising out of” element merely because the fall occurred on work premises, arguing “[t]here can and should be an analysis of the causal connection between the employment and the injury.”  WSI claims that adoption of the positional risk doctrine would change existing North Dakota law, which is a matter for legislative, rather than judicial, determination.

[¶8] Because we have not previously discussed the “arising out of” element in the context of unexplained falls, we first turn our attention to the legislative history of N.D.C.C. § 65-01-02.  In 1977, the Legislature added the “arising out of” language to the definition of a compensable injury.  1977 N.D. Sess. Laws ch. 579, § 2.  The drafter’s note to the 1977 amendment explained:

Presently the law only requires that an injury arise in the course of employment.  Our courts have interpreted that to mean that if an employee is at the 
place
 he is supposed to be at the 
time
 he is supposed to be there, and engaged in an 
activity
 whose purpose is related to employment, any injury he receives is compensable.

. . .  It is hoped—and it is the intent of the Bureau—that the addition of “[arising] out of and” would change that interpretation.

Hearing on S.B. 2158 Before the Senate Indus., Bus., and Labor Comm.
, 45th N.D. Legis. Sess. (Jan. 19, 1977) (testimony of Richard Gross, Counsel for Workmen’s Compensation Bureau).  The legislative history demonstrates that, by amending the statute to define a compensable injury with conjunctive language as one “arising out of and in the course of” employment, the Legislature and WSI—then referred to as “the Bureau”—intended for claimants to prove more than that they merely suffered an injury on work premises and during work hours to receive compensation for the injury.

[¶9] Bearing the 1977 legislative history in mind, we now turn to Fetzer’s argument that we implicitly recognized the positional risk doctrine in 
Mitchell v. Sanborn
, 536 N.W.2d 678 (N.D. 1995).  In that case, Mitchell was working as a police officer when Sanborn, another officer who was also on duty, “bumped [Mitchell’s] knees out from under him.”  
Id.
 at 681.  After Mitchell was awarded worker’s compensation benefits, he filed a personal injury suit against Sanborn.  
Id.
  Sanborn claimed the suit was barred by the exclusive remedy provisions of N.D.C.C. §§ 65-01-01 and 65-01-08.  
Id.
 at 683.  Mitchell responded that Sanborn’s act of horseplay transformed Sanborn from a co-employee to a third-party tortfeasor, and Mitchell argued his claim was therefore allowed under N.D.C.C. § 65-01-09.  
Id.

[¶10] To determine whether Sanborn’s actions transformed him into a third-party tortfeasor, we consulted Larson’s treatise:

[Larson] teaches that co-employees retain their status as co-employees and their immunity from tort liability so long as they are acting in the course of their employment.  According to Professor Larson, the “most satisfactory test” to determine course of employment for purposes of co-employee immunity is the same course-of-employment test used to determine basic compensation coverage.  Under that standard, in determining co-employee immunity, the test is whether the negligent co-employee would have been entitled to receive workers compensation benefits if that co-employee had been injured in the same incident.  We apply Larson’s formulation to this case.

Mitchell
, 536 N.W.2d at 684 (citations omitted).  Focusing our analysis on the “course of employment” element, we determined “Sanborn’s act of horseplay was not a sufficiently substantial deviation from his course of employment so as to transform him from a co-employee to a third-person tortfeasor.”  
Id.
 at 686.

[¶11] In 
Mitchell
, we did not address the positional risk doctrine, nor did we implicitly adopt the doctrine.  Rather, by focusing on the “course of employment” element, we followed the test outlined by Larson in his chapter on horseplay.  
Mitchell
, 536 N.W.2d at 684; 
see
 2 Larson, 
supra
, ch. 23.  Importantly, Larson’s treatise does not state that the course of employment test used for determining co-

employee immunity in a horseplay case should be applied for determining compensability in an unexplained fall case.  
Compare
 1 Larson, 
supra
, ch. 7, 
with
 2 Larson, 
supra
, ch. 23.

[¶12] While the positional risk doctrine may be consistent with a liberal construction of workers’ compensation law, our Workforce Safety and Insurance Act specifically provides, “This title may not be construed liberally on behalf of any party to the action or claim.”  N.D.C.C. § 65-01-01.  A state with a similar law is Nevada, which provides “the provisions of chapters [governing workers’ compensation claims] must not be interpreted or construed broadly or liberally in favor of an employee . . . or the dependents of the employee, or . . . an employer[.]”  Nev. Rev. Stat. § 616A.010(4).  Nevada likewise requires claimants to prove their injury “arose out of and in the course of” employment, Nev. Rev. Stat. § 616C.150(1), and the Nevada Supreme Court has considered an unexplained fall case involving a claimant who urged the adoption of the positional risk doctrine.  
Mitchell v. Clark Cnty. Sch. Dist.
, 111 P.3d 1104, 1106 (Nev. 2005).  In declining to adopt the positional risk doctrine, the Nevada Supreme Court stated the doctrine “reduces the claimant’s burden and requires only a showing that the claimant sustained an injury on the job,” in circumvention of Nevada’s statutory requirements.  
Id.
 at 1107.

[¶13] Similarly, we conclude that the but-for reasoning of the positional risk doctrine is incompatible with the North Dakota Workforce Safety and Insurance Act.  Because the positional risk doctrine requires a claimant only to show that an injury was sustained while at work, the doctrine directly contravenes both the language of N.D.C.C. § 65-01-02(10) and the Legislature’s stated intent in adding the “arising out of” element.  As noted by the ALJ in this case, “Accepting the ‘but-for’ reasoning as satisfying the ‘arising out of’ requirement would negate the necessity of showing the ‘arising out of’ prong altogether. . . .  If merely being at work was sufficient to show causation, the legislature need not have required the ‘arising out of’ test.”  We have often noted the presumption that the Legislature acts with purpose and does not perform idle acts.  
See, e.g.
, 
Wheeler v. Gardner
, 2006 ND 24, ¶ 15, 708 N.W.2d 908; 
see also
 N.D.C.C. § 1-02-38(2) (“In enacting a statute, it is presumed that . . . [t]he entire statute is intended to be effective.”).  In light of this presumption and the pertinent legislative history, we hold the but-for reasoning of the positional risk doctrine is inconsistent with our statute that requires claimants to prove a causal connection between their employment and injury.  We have consistently stated our function is to interpret the law, not to legislate, noting “[i]f the rule is wrong, the legislature has ample power to change it[.]”  
Olson v. Workforce Safety & Ins.
, 2008 ND 59, ¶ 23, 747 N.W.2d 71 (quoting 
CybrCollect, Inc. v. N.D. Dep’t of Fin. Inst.
, 2005 ND 146, ¶ 23, 703 N.W.2d 285).  If the Legislature intends for WSI to award compensation to claimants who suffer unexplained falls at work, the Legislature has the power to amend the plain language of N.D.C.C. § 65-01-02(10) to reflect that intent.  Because Fetzer was unable to show a causal connection between her fall and her employment, the ALJ properly denied Fetzer’s request for compensation.

III

[¶14] We affirm the district court judgment affirming WSI’s order to deny Fetzer’s request for benefits.

[¶15] Carol Ronning Kapsner

Dale V. Sandstrom

Daniel J. Crothers

Gerald W. VandeWalle, C.J.

Maring, Justice, dissenting.

[¶16] I respectfully dissent.  I would adopt the positional-risk doctrine and reverse the district court judgment affirming the Administrative Order. 

[¶17] Before 1977, our statute defined a compensable injury as one arising in the “course of employment.”  
See
 
Schlenk v. Aerial Contractors, Inc.
, 268 N.W.2d 466, 469 (N.D. 1978).  Our legislature amended the definition of a compensable injury in 1977 to “an injury by accident arising out of and in the course of employment.”  1977 N.D. Sess. Laws ch. 579, § 2.  Our Court’s interpretation of this amendment, which added the words “out of and,” was articulated in 
Westman v. N.D. Workers Comp. Bureau
, 459 N.W.2d 540, 545 (N.D. 1990).  Westman was injured when a truck in which he was riding and driven by an employee of Kedney rolled over in a ditch while en route to Minot where Westman was to help unload the truck.  
Id
. at 543.  We held:  “An injury arises in the course of employment if it ‘occurs within the period of employment at a place where the employee may reasonably be and while he was engaged in performing the duties of his contract or is engaged in something incident thereto and contemplated thereby.’”  
Id.
 at 545 (quoting 
Welch v. N.D. Workmen’s Comp. Bureau
, 75 N.D. 608, 31 N.W.2d 498, 502  (1948)).  We concluded that “the injury arose out of and in the course of Westman’s employment with Kedney Warehouse.” 
Id.
  In 
Mitchell v. Sanborn
, 536 N.W.2d 678, 686 n.4 (N.D. 1995), we stated that “[a]lthough we have not explicitly defined the scope of the 1977 amendment, our statement in 
Westman
 encompasses injuries ‘arising out of and in the course of employment.’” 

[¶18] The 
Mitchell
 case involved whether an act of horseplay, which injured a fellow employee, was “‘an injury by accident arising out of and in the course of employment’” and, thus, barred an action in tort against the co-employee.  
Id.
 at 681.  We stated:  “For purposes of receiving benefits, an employee’s injury arises out of and in the course of employment if it ‘occurs within the period of employment at a place where the employee may reasonably be and while he was engaged in performing the duties of his contract or is engaged in something incident thereto and contemplated thereby.’” 
Id.
 at 684 (quoting 
Westman
, 459 N.W.2d at 545).  In 
Mitchell
, our Court noted the legislative history of the 1977 amendment changing the definition of compensable injury.  
Id.
 at 686 n.4.  The majority opinion leaves out significant parts of the drafter’s explanation of this amendment.  The full explanation given was:

One important change proposed in this section is the addition of arising “out of and” in the course of.  Presently the law only requires that an injury arise in the course of employment. Our courts have interpreted that to mean that if an employee is at the 
place
 he is supposed to be at the 
time
 he is supposed to be there, and engaged in an 
activity
 whose purpose is related to employment, any injury he receives is compensable.

That interpretation has recently resulted in a court ruling requiring coverage for an employee involved in a fight with another employee because of an incident which had occurred during the prior weekend which bore no relationship to their work. Presumably all fights which occur in the course of employment, whether related to work or not, are now covered
.  It is hoped — and it is the intent of the Bureau — that the addition of “out of and” would change that interpretation.  Virtually all other states require that an injury arise out of and in the course of employment. 

Hearing on S.B. 2158 Before the Senate Industry, Business and Labor Comm.
, 45th N.D. Legis. Sess. (Jan. 19, 1977) (testimony of Richard Gross, Counsel for Workers Compensation Bureau) (emphasis added).  I agree with Fetzer’s analysis of this history.  I am of the opinion that the addition of the words arising “out of and” were meant to require that the injury have a relationship to the employment.  This analysis is consistent with our past definition of “arising out of and in the course of” employment.  Our Court has said:  “‘Arising in the course of employment’ has reference to the time of service, the hours of employment; ‘arising out of the employment’ is determined by the relation to the master’s business in which the employee works; while ‘arising out of and in the course of employment’ requires a combination of both.”  
Kary v. N.D. Workmen’s Comp. Bureau
, 67 N.D. 34, 272 N.W. 340, 341 (1937).  We also said in 
Kary
 that “[s]ometimes the employment will be found to directly cause the injury, but more often it arises out of the conditions incident to the employment.”  
Id.
 at 341-42.

[¶19] The purpose of the Workforce Safety and Insurance Act is set forth in N.D.C.C. § 65-01-01:

The state of North Dakota, exercising its police and sovereign powers, declares that the prosperity of the state depends in a large measure upon the well-being of its wage workers, and, hence, for workers injured in hazardous employments, and for their families and dependents, sure and certain relief is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding, or compensation, except as otherwise provided in this title, . . .

Our Court has said:  “The purpose of the Workers Compensation Act is to provide sure and certain relief for workers injured in their employment, and we construe the Act with the view of extending its benefit provisions to all who can fairly be brought within them.  The Act is remedial, and we construe it to afford relief and to avoid forfeiture.”  
Ash v. Traynor
, 2000 ND 75, ¶ 8, 609 N.W.2d 96 (citation omitted); 
Shiek v. N.D. Workers Comp. Bureau
, 2001 ND 166, ¶ 26, 634 N.W.2d 493.

[¶20] There are three primary categories of risk in the context of workers’ compensation law:  “(1) risks distinctly associated with employment, (2) risks personal to the claimant, and (3) risks of neither distinctly employment nor distinctly personal in [sic] character.”  
Milledge v. Oaks
, 784 N.E.2d 926, 930 (Ind. 2003).  Risks in the first category are the types of “things that can go wrong around a modern factory, mill, mine, transportation system, or construction project.”  
Id.
 (citing 1 Arthur Larson & Lex K. Larson, 
Larson’s Workers’ Compensation Law
, § 4.01, at 4-1 — 4-2 (2002)).  Risks, such as these, that are “distinctly associated with the employment” are considered “universally compensable.”  
Logsdon v. ISCO Co.
, 618 N.W.2d 667, 672 (Neb. 2000).  The second category of risk involves harms “that can be attributed to personal or idiopathic” characteristics of individual employees.  
Id.
  Injuries solely caused by personal conditions, “such as a bad knee, epilepsy, or multiple sclerosis,” fall within this category.  
In re Margeson
, 27 A.3d 663, 667 (N.H. 2011).  These harms are considered “universally noncompensable.”  
Logsdon
, 618 N.W.2d at 672.  The third type of risks are considered “neutral,” as they are “of neither distinctly employment nor distinctly personal character.”  
Margeson
, 27 A.3d at 667 (citation omitted).  Unexplained falls are typically considered neutral risks.  
Id.
; 
Circle K Store No. 1131 v. Indus. Comm’n of Ariz.
, 796 P.2d 893, 898 (Ariz. 1990).

[¶21] Courts have taken three approaches to the “arising out of” requirement in unexplained fall cases.  
Milledge
, 784 N.E.2d at 931; 
Logsdon
, 618 N.W.2d at 672.  The first approach requires the employee “to rule out idiopathic causes for the fall.”  
Milledge
, 784 N.E.2d at 931.  If the employee successfully carries this burden, “an inference arises that the fall arose out of employment.”  
Id.
  Under the second approach, the employee must establish a causal connection between the injury and the employment.  
Logdson
, 618 N.W.2d at 672 (citing 
Brickson v. ILHR Dep’t
, 162 N.W.2d 600 (Wis. 1968)); 
Circle K
, 796 P.2d at 897 (citing 
McClain v. Chrysler Corp.
, 360 N.W.2d 284 (Mich. Ct. App. 1984)).  Compensation is denied when a causal connection cannot be shown.  
Logsdon
, 618 N.W.2d at 672.  The third approach is the positional-risk doctrine.  Under the positional-risk approach, “‘[a]n injury arises out of the employment if it would not have occurred 
but for
 the fact that the conditions and obligations of the employment placed claimant in the position where he was injured.’”  
Milledge
, 784 N.E.2d at 931 (quoting Larson, 
supra
,   3.05, at 3-6).  “This but for reasoning is the foundation of the positional risk doctrine, under which if the ‘in the course of’ employment element is met, then there is a rebuttable presumption that the injury ‘arises out of’ employment.”  
Id.
 

[¶22] Many jurisdictions have adopted the positional-risk doctrine.  Since neutral risks are not associated with the employment, the employer understandably contends it should not have to bear the expense.  “The alternative, of course, is to place the burden on the employee.”  Larson, 
supra
, § 7.02[4], 7-20.  Jurisdictions have adopted the positional-risk doctrine on “the principle that employees who are on the job and performing duties for their employers should be compensated for injuries occurring in the course thereof.”  
Logsdon
, 618 N.W.2d at 673.  The doctrine is further based on the rationale that “the particular source of injury is neutral because the nature of a known risk is associated with neither the employment nor the employee personally.”  
Id.
  The risk may also be “neutral” because the nature of the cause of harm is unknown.  
Id.
; 
see also
 Larson, 
supra
, § 7.04[1][a], 7-24 (noting a particular source of injury may be classified as “neutral for either of two reasons:  The nature of the risk may be known, but may be associated neither with the employment nor the employee personally; or the nature of the cause of harm may be simply unknown.”).  Professor Larson states:  “The commonest example of the latter is the unexplained fall in the course of employment.  If an employee falls while walking down the sidewalk or across a level factory floor for no discoverable reason, the injury resembles that from stray bullets and other positional risks in this respect:  The particular injury would not have happened if the employee had not been engaged upon an employment errand at the time.”  
Id.
  Professor Larson points out that it is significant that the majority of courts confronted with the compensability of an unexplained fall have awarded compensability under the positional-risk doctrine.  
Id.
  I recognize that a number of jurisdictions have rejected the doctrine,
(footnote: 1) but I am persuaded by Professor Larson and the majority of courts that the positional-risk doctrine should be adopted in unexplained fall cases.  
See
 Larson, 
supra
, 7.04[1][a]; 
Milledge v. Oaks
, 784 N.E.2d 926, 934 n.2 (2003) (setting forth courts that have adopted the positional-risk doctrine); 
Circle K Store No. 1131 v. Indus. Comm’n of Ariz.
, 796 P.2d 893 (Ariz. 1990); 
Delaplaine Farm Ctr. v. Crafton
, 2011 Ark. App. 202 (Mar. 9, 2011); 
Horodyskyj v. Karanian
, 32 P.3d 470 (Colo. 2001); 
Ryerson v. A. E. Bounty Co.
, 140 A. 728 (Conn. 1928); 
Mayo v. Safeway Stores, Inc.
, 457 P.2d 400 (Idaho 1969); 
Milledge v. Oaks
, 784 N.E.2d 926 (Ind. 2003); 
Tommy Thompson Produce Co. v. Coulter
, 678 S.W.2d 794 (Ky. Ct. App. 1984); 
Mulready v. Univ. Research Corp.
, 756 A.2d 575 (Md. 2000); 
Stanley Baran’s Case
, 145 N.E.2d 726 (Mass. 1957); 
Whetro v. Awkerman
, 174 N.W.2d 783 (Mich. 1970); 
United Fire & Cas. Co. v. Maw
, 510 N.W.2d 241 (Minn. Ct. App. 1994); 
Johnson v. Roundtree
, 406 So.2d 810 (Miss. 1981); 
Logsdon v. ISCO Co.
, 618 N.W.2d 667 (Neb. 2000); 
Mule v. N.J. Mfrs. Ins. Co.
, 812 A.2d 1128 (N.J. Super. Ct. App. Div. 2003); 
Ensley v. Grace
, 417 P.2d 885 (N.M. 1966); 
Grimaldi v. Shop Rite Big V
, 90 A.D.2d 608 (N.Y. App. Div. 1982); 
Taylor v. Twin City Club
, 132 S.E.2d 865 (N.C. 1963); 
Smith v. Apex Div., Cooper Indus. Inc.
, 623 N.E.2d 700 (Ohio Ct. App. 1993); 
Turner v. B Sew Inn
, 18 P.3d 1070 (Okla. 2000); 
Steinberg v. S.D. Dep’t of Military & Veterans Affairs
, 607 N.W.2d 596 (S.D. 2000); 
Clodgo v. Indus. Rentavision, Inc.
, 701 A.2d 1044 (Vt. 1997); 
Am. Mfrs. Mut. Ins. Co. v. Hernandez
, 642 N.W.2d 584, 589-91 (Wis. Ct. App. 2002) (lacks the “in the course of” language but requires that, at the time of the injury, the employee was “‘performing service growing out of and incidental to his or her employment’ which refers to the ‘time, place, and circumstances’ under which the injury occurred”). 

[¶23] Professor Larson points out that “[e]ither the employer or the employee must bear the loss; to show connection with the employment, there is at least the fact that the injury occurred while the employee was working; to show connection with the employee personally there is nothing; therefore, although the work connection is slender, it is at least stronger than any connection with the claimant’s personal life.” Larson, 
supra
, § 4.03, 4-3.  I agree.  I would join the growing majority of courts that have adopted the positional risk doctrine in unexplained fall cases and reverse the judgment of the district court and the administrative order.

[¶24] Mary Muehlen Maring

FOOTNOTES
1:    
Brown v. Patton
, 77 So.3d 591 (Ala. 2011); 
Chaparral Boats, Inc. v. Heath
, 606 S.E.2d 567 (Ga. Ct. App. 2004); 
Baldwin v. Ill. Workers’ Comp. Comm’n
, 949 N.E.2d 1151 (Ill. App. 2011); 
Bartle v. Sidney Care, Inc.
, 2003 Iowa App. LEXIS 836 (Oct. 15, 2003); 
Abel v. Mike Russell’s Std. Serv.
, 924 S.W.2d 502 (Mo. 1996); 
Mitchell v. Clark Cnty. School Dist.
, 111 P.3d 1104 (Nev. 2005); 
In re Margeson
, 27 A.3d 663 (N.H. 2011); 
Maggiacomo v. R.I. Pub. Transit. Auth.
, 508 A.2d 402 (R.I. 1986); 
Bagwell v. Ernest Burwell, Inc.
, 88 S.E.2d 611 (S.C. 1955); 
Butler v. S. States Coop., Inc.
, 620 S.E.2d 768 (Va. 2005).