CATHY BALDWIN, Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Securitas Security Services, Appellee).

Fourth District (Illinois Workers' Compensation Commission Division)
No. 4—10—0375WC

Argued April 12, 2011.—Opinion filed April 28, 2011.

Nicholas M. Schiro and Rowan Themer (argued), both of Tuggle, Schiro & Lichtenberger, P.C., of Danville, for appellant.

Robert J. Doherty, Jr., of Roddy, Leahy, Guill & Zima, Ltd., of Chicago, for appellee.

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.

Presiding Justice McCullough and Justices Holdridge, Hudson and Stewart concurred in the judgment and the opinion.

## OPINION

The claimant, Cathy Baldwin, appeals from an order of the circuit court of Vermilion County which confirmed two decisions of the Illinois Workers' Compensation Commission (Commission) denying her benefits under the Workers' Compensation Act (Act) (820 ILCS 305/1 et seq.(West 2004)) for injuries she sustained on October 8, 2006, and November 19, 2006, while in the employ of Securitas Security Services (Securitas). For the reasons that follow, we affirm the judgment of the circuit court.

The following is a summary of the relevant evidence adduced at the arbitration hearing.

The claimant was employed by Securitas as a security guard. On October 8, 2006, she was assigned to inside guard duty, which consisted of walking throughout a building and walking around the outside perimeter. According to her testimony, she was descending a metal staircase when she slipped and fell, landing on her left side. She testified that she did not know what caused her foot to slip. She saw no defect on the step or any liquid substance thereon. At the time that she slipped, the claimant was wearing shoes with rubber soles, she

was not in a hurry, and her hands were free. The claimant stated that, just prior to her fall, she had walked through a freezer and moisture "might" have been on her shoes. However, she admitted that she did not know what actually caused her foot to slip. The claimant testified that, prior to October 8, 2006, she had never experienced any problems with her legs, she did not suffer from any medical condition that affected her balance or made her dizzy, she had no problems walking or going up or down stairs, and she had never used a cane.

Following her fall on October 8, 2006, she sought medical treatment at Provena Medical Center (Provena). The records of that visit indicate that the claimant was diagnosed with a left buttock/left posterior hip contusion with secondary spasms and pain in the left buttock, left thigh and left hamstring muscle. The claimant was given a TENS unit, prescribed medication, placed on an off-work status, and advised to return on October 12, 2006, for follow-up treatment.

When the claimant returned to Provena on October 12, 2006, she continued to complain of pain. Her diagnosis remained unchanged. She was given a cane to assist her with walking and advised to return on October 19, 2006, or sooner if necessary.

Provena's records reflect that when the claimant returned on October 17, 2006, she reported increased pain when she walked long distances and when she sat for prolonged periods of time. She also reported that the TENS unit was helping and that, generally, her pain was improving. The attending physician continued the claimant's use of a cane and a TENS unit, continued to prescribe medication, and recommended a referral to a physical therapist for evaluation and treatment.

When the claimant returned to Provena on November 3, 2006, she reported difficulty with stair climbing. The attending physician's notes of that visit state that on examination the claimant walked normally and that her stair-climbing exercises were "okay," but some pain and difficulty were noted with repetition. The claimant's medications were extended, and she was to continue the use of the TENS unit, complete the physical therapy regimen, and use the cane on an as-needed basis.

On November 16, 2006, the claimant returned to Provena and reported that the physical therapy sessions had helped, that she was 90% improved, and that she was pain free. The notes of that visit state that the claimant had worked outside on the previous night in the cold and rain and that she had tolerated the work well. The attending physician's report states that, on examination, the claimant demonstrated normal function. She was advised to continue home exercises, released to return to regular work immediately, and discharged from care.

The claimant returned to light-duty work at 11 p.m. on November 16, 2006. According to the claimant, she informed her supervisor, Greg Daugherty, at the beginning of her shift that her leg was still hurting and that she did not believe she could do inside guard duties because of all of the walking involved. The claimant testified that Daugherty told her to take her time and do part of her rounds and sit down before doing the rest. When Daugherty testified, he stated that, after the claimant returned to full-duty work, she told him that she felt "great" and never complained of leg cramping or soreness.

On November 18, 2006, the claimant was placed on inside duty requiring her to walk throughout the building and walk around the outside perimeter.

On November 19, 2006, the claimant was again assigned to inside duty. She testified that while walking up a flight of stairs her leg began to cramp and throb. The claimant stated that, when she attempted to walk back down the stairs, her leg began cramping "real bad" and gave out, causing her to fall.

After her fall, the claimant was taken to Provena, where she was diagnosed as having suffered a pelvic fracture. She was admitted to the hospital but, on November 22, 2006, she was transferred to the Danville Care Center for follow-up care and treatment.

At the request of Securitas, Dr. D. Dirk Nelson reviewed the claimant's medical records from both falls. His diagnosis of the claimant's injuries agreed with those of the attending physicians at Provena. In his report dated January 9, 2007, Dr. Nelson opined that the claimant's fall on October 8, 2006, did not cause or contribute to any condition that might have influenced her injury on November 19, 2006. Additionally, he did not believe that any part of the claimant's injuries on October 8, 2006, would have caused her leg to give way and cause additional injury on November 19, 2006.

On January 24, 2007, the claimant was examined by Dr. David J. Fletcher at the request of her own attorneys. In his report of that examination, Dr. Fletcher opined that the claimant's leg injury and subsequent condition from her first fall contributed to bringing about her second fall. According to Dr. Fletcher, the claimant "was not 100% with the left leg and buttock contusion suffered from the first fall when she returned to full duties after 11/16/06." The two applications for adjustment of claim filed by the claimant for the injuries she sustained as a result of the falls on October 8, 2006, and November 19, 2006, were consolidated for a hearing pursuant to section 19(b) of the Act (820 ILCS 305/19(b) (West 2006)). Following that hearing, the arbitrator issued a separate decision for each case, concluding in both cases that the claimant failed to prove that she sustained injuries aris-

ing out of and in the course of her employment with Securitas. As a consequence, the arbitrator denied the claimant benefits under either claim.

The claimant filed a petition for review of the arbitrator's decisions before the Commission. In separate unanimous decisions, the Commission affirmed and adopted the arbitrator's decisions, denying the claimant benefits under the Act for the injuries she sustained as a result of either incident.

Thereafter, the claimant filed a single petition seeking judicial review of both of the Commission's decisions in the circuit court of Vermilion County. Securitas argued, *inter alia*, that the claimant's action for judicial review in the circuit court was fatally defective for failure to comply with the requirements of section 19(f)(1) of the Act (820 ILCS 305/19(f)(1) (West 2006)). In a single order, the circuit court denied Securitas' motion to dismiss the action on jurisdictional grounds and confirmed both of the Commission's decisions. This appeal followed.

Although Securitas argues on appeal that the circuit court erred in failing to dismiss the claimant's petition for judicial review by reason of its failure to comply with section 19(f)(1) of the Act, we note that Securitas never filed a notice of appeal. Notwithstanding that fact, we will, nevertheless, address the issue as we have an independent obligation to consider matters that go to the jurisdiction of the circuit court. *Reichert v. Court of Claims*, 203 Ill. 2d 257, 261, 786 N.E.2d 174 (2003); *Consolidated Freightways v. Illinois Workers' Compensation Comm'n*, 373 Ill. App. 3d 1077, 1079, 870 N.E.2d 839 (2007).

The record in this case establishes that the claimant filed her action for judicial review in the circuit court of Vermilion County on July 16, 2009. She filed a request for the issuance of summons requesting that the Commission certify the transcript of proceedings in cases No. 06 WC 54938 (the claim relating to her fall on October 8, 2006) and No. 06 WC 54919 (the claim relating to her fall on November 19, 2006), asserting that the Commission's decision was received on June 26, 2009. In addition, the claimant requested that summons also be directed to Securitas and its attorney. Along with her request for the issuance of summons, the claimant filed the affidavit of her attorney stating that he forwarded a check in the sum of $35 to the Commission on July 7, 2009, via Federal Express overnight delivery. The affidavit also states that the Commission received the check on July 8, 2009, as evidenced by a Federal Express tracking update attached to the affidavit, reflecting that the delivery had been received at the Commission's mailroom at 8:32 a.m. on July 8, 2009, and signed for by T. Zelke.

The request for summons and the affidavit were filed within 20 days of receipt of the Commission's decisions as required by section 19(f)(1) of the Act, and the $35 payment evidenced by the affidavit was the sum that the Commission fixed in each of its decisions as the probable cost of the record. The only argument made by Securitas to support its assertion that the claimant's action in the circuit court should have been dismissed is that section 19(f)(1) does not provide for the consolidation of multiple appeals in a single action.

In the case of *Chicago Transit Authority v. Industrial Comm'n*, 238 Ill. App. 3d 202, 606 N.E.2d 236 (1992), this court was faced with a fact situation almost identical to the instant case. Two separate applications for adjustment of claim were consolidated for a single arbitration hearing. The arbitrator issued two separate decisions following the hearing. On review, the Commission issued two separate decisions on the same day. Judicial review of both decisions was sought with the filing of a single request for summons, referencing both Commission case numbers. A motion to dismiss was filed, contending that the failure to file two petitions for review of the Commission decisions deprived the circuit court of jurisdiction. *Chicago Transit Authority*, 238 Ill. App. 3d at 203. We concluded that substantial compliance with section 19(f)(1) of the Act had been demonstrated. None of the requirements of the statute had been completely omitted and, at worst, the requirements had been imperfectly complied with by the filing of a single request for summons. Consequently, in the absence of prejudice to the respondent, the circuit court had subject-matter jurisdiction of the action. *Chicago Transit Authority*, 238 Ill. App. 3d at 207.

In this case, as in *Chicago Transit Authority*, none of the requirements of section 19(f)(1) was completely omitted; the only imperfection was the filing of a single request for summons instead of two separate requests. Additionally, Securitas has made no argument of prejudice. For these reasons, we hold that the claimant substantially complied with the requirements of section 19(f)(1), the circuit court had jurisdiction to resolve the action, and the circuit court properly denied Securitas' motion to dismiss.

Next, we address the claimant's arguments that the Commission's findings that she failed to prove that she sustained injuries arising out of and in the course of her employment on either October 8, 2006, or November 19, 2006, are against the manifest weight of the evidence.

A claimant bears the burden of proving by a preponderance of the evidence that her injury arose out of and in the course of the employment. 820 ILCS 305/2 (West 2004). Both elements must be present in order to justify compensation. *Illinois Bell Telephone Co. v. Industrial Comm'n*, 131 Ill. 2d 478, 483, 546 N.E.2d 603 (1989). In this case, only

the "arising out of" component is at issue as the plaintiff's falls clearly occurred on the employer's premises and while she was working.

Arising out of the employment pertains to the origin or cause of a claimant's injury. *William G. Ceas & Co. v. Industrial Comm'n*, 261 Ill. App. 3d 630, 636, 633 N.E.2d 994 (1994). In order to determine whether a claimant's injury arose out of her employment, we first categorize the risk to which she was exposed. Risks to employees fall into three groups: (1) risks distinctly associated with the employment; (2) risks personal to the employee, such as idiopathic falls; and (3) neutral risks that have no particular employment or personal characteristics. *First Cash Financial Services v. Industrial Comm'n*, 367 Ill. App. 3d 102, 105, 853 N.E.2d 799 (2006).

The record reflects that, at the time of the claimant's fall on October 8, 2006, she was in good health, she had never experienced any problems with her legs, she did not suffer from any medical condition that affected her balance or made her dizzy, and she had no problems walking or using stairs. Nevertheless, she slipped and fell as she was descending a metal staircase. The claimant testified that she did not know what caused her to slip. She saw no defect in the stairs, nor did she observe any liquid substance thereon.

The claimant's own testimony eliminates any notion that her fall on October 8, 2006, was idiopathic in nature. As to whether her fall on that date stemmed from a risk associated with her employment, we note that the claimant theorized that moisture "might" have built up on her shoes from walking through a freezer, but her testimony in this regard was pure conjecture. The claimant cannot show more than a mere possibility that moisture which may have built up on her shoes from walking through a freezer caused her to slip and fall on the stairs. See *First Cash Financial Services*, 367 Ill. App. 3d at 106-07. Simply put, the claimant does not know what caused her to fall on October 8, 2006.

For an injury caused by an unexplained fall to arise out of the employment, a claimant must present evidence which supports a reasonable inference that the fall stemmed from a risk related to the employment. *Builders Square, Inc. v. Industrial Comm'n*, 339 Ill. App. 3d 1006, 1010, 791 N.E.2d 1308 (2003). However, an injury resulting from a neutral risk to which the general public is equally exposed does not arise out of the employment. *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 59 (1989). By itself, the act of walking up a staircase does not expose an employee to a risk greater than that faced by the general public. *Elliot v. Industrial Comm'n*, 153 Ill. App. 3d 238, 244, 505 N.E.2d 1062 (1987); see also *Illinois Consolidated Telephone Co. v. Industrial Comm'n*, 314 Ill. App. 3d 347, 353, 732 N.E.2d 49 (2000) (Rakowski, J., specially concurring).

The claimant in this case did not present any direct evidence explaining the cause of her fall. She testified that she did not know why she fell and that no one witnessed her fall. As noted earlier, the notion that moisture "might" have built up on her shoes from walking through a freezer is pure conjecture.

Because the claimant did not present any evidence establishing the cause of her fall on October 8, 2006, or that she was exposed to a risk greater than that faced by the general public, she failed to prove that her injury on that date arose out of her employment. For these reasons, the Commission's decision denying her any benefits under the Act for injuries she may have sustained on October 8, 2006, is not against the manifest weight of the evidence. *First Cash Financial Services*, 367 Ill. App. 3d at 107.

Finally, we address the Commission's decision denying the claimant benefits for the injuries she sustained when she fell down the stairs while working on November 19, 2006. The claimant testified that when she attempted to walk down the stairs at work on November 19, 2006, her leg began cramping "real bad" and it gave out, causing her to fall.

Falls resulting from an internal, personal origin are idiopathic in nature. An injury resulting from an idiopathic fall arises out the employment only where the employment conditions significantly contributed to the injury by increasing the risk of falling or the effects of the fall. *Stapleton v. Industrial Comm'n*, 282 Ill. App. 3d 12, 16, 668 N.E.2d 15 (1996). The claimant offered no evidence that, on November 19, 2006, any condition of the premises in which she was working or of the staircase on which she fell contributed to her fall or placed her in a position which increased the dangerous effects of the fall. *Elliot*, 153 Ill. App. 3d at 244. Her own testimony clearly demonstrates that the claimant's fall on November 19, 2006, resulted solely from an internal, personal origin. Her fall was purely idiopathic and noncompensable under the Act. *First Cash Financial Services*, 367 Ill. App. 3d at 105; *Stapleton*, 282 Ill. App. 3d at 16; *Elliot*, 153 Ill. App. 3d at 242.

The foregoing analysis leads us to conclude that the claimant failed to prove that the injuries she sustained as a result of her fall on November 19, 2006, arose out of her employment. Therefore, the Commission's decision denying her any benefits under the Act for injuries she may have sustained on that date is not against the manifest weight of the evidence.

Based upon the foregoing analysis, we affirm the judgment of the circuit court which confirmed the decisions of the Commission, deny-

ing the claimant benefits under the Act for injuries she sustained on October 8, 2006, and November 19, 2006.

Affirmed.