2018 IL App (3d) 170162

Opinion filed August 8, 2018

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2018

| | | |
|---|---|---|
| THOMAS J. PENN JR., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Peoria County, Illinois, |
| | ) | |
| v. | ) | |
| | ) | |
| THE COUNTY OF PEORIA, ILLINOIS; LORI | ) | |
| S. CURTIS LUTHER, in Her Official Capacity | ) | |
| as Administrator of Peoria County; and KATE | ) | |
| VAN BEEK, in Her Official Capacity as | ) | |
| Assistant County Administrator/Health and | ) | |
| Human Services and Authorized Agent for the | ) | |
| Illinois Municipal Retirement Fund, | ) | |
| | ) | |
| Defendants-Appellants, | ) | Appeal No. 3-17-0162 |
| | ) | Circuit Nos. 14-MR-551 and |
| THOMAS J. PENN JR., | ) | 16-MR-726 |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE PEORIA COUNTY BOARD COUNTY | ) | |
| OPERATIONS COMMITTEE and MICHAEL | ) | |
| PHELAN, in His Official Capacity as Chairman | ) | |
| of the Peoria County Board County Operations | ) | |
| Committee, | ) | The Honorable |
| | ) | Thomas A. Keith, |
| Defendants-Appellants. | ) | Judge, Presiding. |

JUSTICE WRIGHT delivered the judgment of the court, with opinion.
Presiding Justice Carter and Justice O'Brien concurred in the judgment and opinion.

OPINION

¶ 1     The Illinois Municipal Retirement Fund (IMRF) is the administrative agency with the statutory subject matter jurisdiction to render a final administrative decision on IMRF coverage and participation issues, thereby exhausting all avenues of administrative remedies. The County of Peoria, Illinois (County), lacked the statutory subject matter jurisdiction to render a final administrative decision on IMRF coverage and participation issues pertaining to a purported county employee. Therefore, the County's decision, following a hearing conducted by the Peoria County Board County Operations Committee (Committee), was void due to the County's lack of subject matter jurisdiction.

¶ 2                                    FACTS

¶ 3     The County is a participating municipality in the IMRF, which is governed by article 7 of the Illinois Pension Code (40 ILCS 5/7-101 *et seq.* (West 2016)). The IMRF is a pension fund that pays annuities and other benefits to certain employees and their beneficiaries. *Id.* § 7-102. The IMRF is administered by a board of trustees. *Id.* § 7-120.

¶ 4     Thomas J. Penn, Jr. was a Peoria County employee enrolled in IMRF from December 1968 through December 1984. During that time, Penn worked for the County in several capacities, including assistant state's attorney, assistant public defender, and the public defender.

¶ 5     At some point in time, Penn personally suggested to his employer, the County, that the County could save money by changing Penn's employment status with the County from employee to independent contractor. Penn suggested the quality of the work performed by his part-time assistant public defenders would improve if the County changed the nature of Penn's relationship with the County.

¶ 6        Beginning in December 1984, Penn, the County, and the Tenth Judicial Circuit entered into a series of contracts restructuring the professional relationship between the County and Penn. In the contracts, Penn was described as an "independent contractor" with "complete control of the method of his work and the manner of its performance." Penn was responsible for the hiring and compensation of his staff, including assistant public defenders, and received funds from the County for his office expenses. Penn was also engaged in private practice at his own law firm during the time the contracts were in effect.

¶ 7        Penn resigned from his position as the public defender in December 1984. Following his 1984 resignation, Penn terminated his IMRF participation and requested a refund of his portion of all prior IMRF contributions. Also, in 1984, Penn and the County successfully negotiated the terms of a contract that referred to Penn as an independent contractor and required Penn to continue acting as the public defender of Peoria County. After 1984, due to successive contracts, a longstanding contractual relationship existed between Penn and the County from 1984 until April 30, 2014.

¶ 8        On April 24, 2014, just days before the termination date of Penn's final contract with the County, Penn's counsel sent a letter (the 2014 letter) to Kate Van Beek, the Assistant County Administrator. The 2014 letter stated, in relevant part, as follows:

> "Recent events have clarified that Peoria County views [Penn's] status as that of an employee, rather than an independent contractor. As a consequence, he is eligible for enrollment in the Illinois Municipal Retirement Fund ("IMRF"), as provided in the Illinois Pension Code. See 40 ILCS 5/7-109(c)(3) (defining "employee" for purposes of the Pension Code):

All persons, including, without limitation, *public defenders* and probation officers, who receive earnings from general or special funds of a County for performance of personal services or official duties within the territorial limits of the county, are employees of the county…. It is hereby established that an employer-employee relationship under the usual common-law rules exists between such employees and the county paying their salaries….

We ask that you as the IMRF Authorized Agent for Peoria County take forthwith all steps necessary to enroll Mr. Penn in the IMRF, including submission of IMRF Form 6.10 (Notice of Enrollment in IMRF). We also request that you sign and certify the Application for Retroactive Service Credit, IMRF Form 6.04, and the Omitted Service Credit Verification, IMRF Form 6.05, which are enclosed, and forward the completed forms to the IMRF."

Penn's counsel enclosed the relevant IMRF forms in the 2014 letter. The information Penn provided in IMRF form 6.04 contained Penn's certification regarding his estimation of his earnings from January 1, 1985, until April 30, 2014. In IMRF form 6.05, Penn also estimated the number of hours he worked during each month beginning on January 1, 1985, and ending on April 30, 2014. The 2014 letter indicated that the number of hours worked were based on Penn's best estimation.

¶ 9 On April 30, 2014, Van Beek responded to Penn's letter. Van Beek's response requested Penn to identify the "recent events" supporting a shift in the County's view of Penn's status as an independent contractor after 1984. Further, Van Beek asked for an explanation of the precise method Penn used to estimate the number of hours he worked for each month from January 1,

4

1985, through April 30, 2014. Van Beek pointed out that Penn withdrew all his prior contributions to IMRF in 1984. Van Beek observed that "the withdrawal implies he knew he was terminating employment and not continuing employment in a new position."

¶ 10 On June 5, 2014, Penn's counsel responded to Van Beek's April 30, 2014, letter. Penn claimed that his status as an employee or independent contractor was irrelevant because IMRF "participation is mandatory for public defenders regardless of their contractual status." Penn also claimed his estimate of the number of hours worked was based on his "personal experience as well as the assigned work load." In the letter, Penn reiterated his request for the County to enroll him in IMRF by completing IMRF form 6.10 and then sign and certify the enclosed IMRF forms 6.04 and 6.05.

¶ 11 On June 16, 2014, a Peoria County assistant state's attorney, William Atkins, wrote Penn's counsel on Van Beek's behalf. The letter stated that Van Beek was unable to enroll Penn in the IMRF or certify the accuracy of Penn's estimations of the undocumented hours Penn devoted to his public defender duties for the last 39 years. Further, the letter stated, in part:

"Setting aside the issue of whether Mr. Penn was an employee of the County, it is still not clear that he worked the required number of hours to participate in IMRF in any of his years as Public Defender. My client does not concede that Mr. Penn was an employee but even if he was, it is doubtful that he actually devoted sufficient time in each and every year of his tenure as Public Defender, especially given his prior inability to give specifics to the County Board regarding his performance as Public Defender.

If you or your client wishes to discuss this further, we are willing to do so but it appears that we have a fundamental difference of opinion as to the operative facts in this situation."

¶ 12                                      I. Peoria County Case No. 14-MR-551

¶ 13         In August 2014, Penn filed a complaint for a declaratory judgment and order of *mandamus* against the County, and against Van Beek, in her official capacity as assistant county administrator/health and human services and authorized agent for the IMRF, and then-County Administrator Lori S. Curtis Luther. This 2014 complaint was designated as Peoria County case No. 14-MR-551. In this action, Penn requested orders from the court commanding the County to certify and deliver IMRF forms 6.04, 6.05, and 6.10. Penn also asked the trial court to enter an order declaring that "Penn has at all times since 1971 been employed by Peoria County in a qualified position that requires participation in IMRF and that Peoria County is required to make all necessary contributions to IMRF on Mr. Penn's behalf."

¶ 14         On September 30, 2015, the County filed a motion to dismiss the amended complaint in Peoria County case No. 14-MR-551, arguing, among other things, that Penn failed to exhaust his administrative remedies. The County argued that Penn was required to obtain a final administrative decision from the IMRF Board of Trustees before Penn could pursue any declaratory action in the circuit court. The trial court seemed to agree that Penn had not exhausted his administrative remedies before turning to the circuit court for declaratory relief. Thus, on December 18, 2015, the trial court stayed proceedings in Peoria County case No. 14-MR-551 to allow Penn to complete the administrative process by securing a final decision from IMRF. The trial court stated:

6

"I don't think the administrative process should take that long. What I don't want to have happen is to stay this and then I get into this bureaucratic vortex in the county, who is a litigant here now. So I get into this bureaucratic vortex where it just sits there and just kind of spins in the wind for a while, and then we find ourselves right back here without ever getting to the board, the IMRF board for a final determination. And then I'll move forward or it's moot, one or the other."

¶ 15 Shortly after these comments from the trial court, Penn's attorney summarized his own understanding of the trial court's reasoning for staying Peoria County case No. 14-MR-551. Penn's counsel stated:

"Yeah. So if we can get a decision that is from whoever the authorized agent that they claim it to be, we can go to the IMRF and they can either say this is not the right procedure, in which case we know we're not on the right procedure, or they can say, 'Great. Here's your [IMRF] hearing.' Or whatever. You know, we just need to get the piece of paper, which is either them—if they don't want to enroll—"

¶ 16 On August 31, 2016, Penn received the County's final decision from the Committee. Within 30 days, on September 27, 2016, Penn filed a complaint requesting the circuit court to conduct administrative review of the County's final refusal and unequivocal decision not to enroll Penn in IMRF for any time after 1984.

¶ 17 However, Penn did not take the next step by reaching out to IMRF. Specifically, after receiving the County's final refusal, Penn did not approach IMRF for an independent staff determination of his IMRF eligibility and/or Penn did not file a claim with IMRF (on the basis that the Committee's decision qualified as IMRF's staff

7

determination because Michael Phelan, the Committee's chairman, was the County's authorized IMRF agent). Instead, Penn filed a complaint in the circuit court seeking administrative review of the *County's* final refusal to enroll Penn in IMRF after 1984. This lawsuit, Peoria County case No. 16-MR-726, named the Committee, and Phelan, the chairman of the Committee, as defendants. In this lawsuit, Penn asked the circuit court to exercise administrative review of the August 31, 2016, decision from the County.

¶ 18    The County's final administrative decision, at issue in Peoria County case No. 16-MR-726, included 26 factual findings resulting for a lengthy administrative hearing before the Committee. The Committee found that Penn negotiated the terms of the public defender contracts with the County from 1984 until 2014. The Committee found that Penn voluntarily entered into the contracts and voluntarily resigned from full-time employment with the County and from participation with IMRF in December 1984. The Committee found, according to the terms of the contract, Penn became an independent contractor in 1984 and had "complete control over the manner and method of the work of the Public Defender's office, including hiring, firing, assigning work, setting pay and providing training and supervision, and all other employment-related activities for office staff and assistant public defenders."

¶ 19    The Committee found that Penn was a participating member of IMRF from 1969 to 1984 but that Penn requested and received a refund of all IMRF contributions after resigning as a County employee in December 1984. Further, the Committee found that the County and Van Beek correctly decided not to certify or complete IMRF forms 6.04, 6.05 and 6.10, because:

"Penn was not then a member of the [IMRF], the hours worked provided were not the actual hours worked and the records verifying those hours were not provided by Penn after he was asked to provide them, and Penn's earnings and hours estimates did not match Peoria County employee payroll records because Penn was not a part of the County employee payroll ledger."

¶ 20    The Committee found that Penn did not fully comply with section 3-4010 of the Counties Code (55 ILCS 5/3-4010 (West 2016)), a statute requiring public defenders to keep a record of the services rendered and later provide those records to the County Board. The Committee also stated:

"While the Committee appreciates that Mr. Penn, for the most part, worked diligently as Public Defender, the Committee finds that his own testimony, that of Judge Shadid, and the unsworn statements of some of Penn's former assistants and his direct family members of the number of hours he worked do not alter or change the correctness of Ms. Van Beek's and the County's decision to decline Penn's IMRF-related requests. In the first instance, none of that testimony or those statements contained detailed hours reports, and many acknowledged they could not vouch for the number of hours Penn worked. Beyond that, the Committee finds that with the number of assistants set in the contracts, it was not necessary for Penn to continuously work the IMRF minimum number of hours, particularly when he had office staff, and his own private practice."

¶ 21    The Committee also noted that "Penn repeatedly testified that at the June 13, 2016, hearing that he could not remember any details from the 1980's involving the number of hours he worked." The Committee found that under the terms of the public defender contracts and their

voluntary nature, together with Penn's failure to comply with the public defender reporting statute, the County did not have an obligation to enroll Penn in IMRF after 1984.

¶ 22        On, March 14, 2017, instead of addressing the stay in Peoria County case No. 14-MR-551, the trial court dismissed the *mandamus* and declaratory judgment action, *sua sponte*, without prejudice, due to the pending appeal in Peoria County case No. 16-MR-726. On March 22, 2017, defendants filed an amended notice of appeal to include the dismissal of the *mandamus* and declaratory judgment action without prejudice, in Peoria County case No. 14-MR-551.[1]

¶ 23                          II. Peoria County Case No. 16-MR-726

¶ 24        As stated above, within 30 days of receipt of the County's final refusal to enroll Penn in IMRF on August 31, 2016, Penn initiated Peoria County case No. 16-MR-726 on September 27, 2016. In this complaint, Penn named the Committee and Phelan, in his capacity as chairman of the Committee, as the defendants in that action. In this lawsuit, Penn asked the circuit court to exercise administrative review of the August 31, 2016, decision from the Committee.

¶ 25        In paragraph nine of the complaint in Peoria County case No. 16-MR-726, Penn alleged: "The Committee's decision on IMRF enrollment, according to the County, is final and not subject to review by the County Board." Penn's "Complaint for Administrative Review" lists "the Administrative Review Law, 735 ILCS 5/3-101 *et seq.*" as the only source for the circuit court's subject matter jurisdiction to conduct administrative review of the County's interpretation of the Illinois Pension Code and the relevant findings of facts. Penn's complaint did not identify the specific enabling statute that would cause the County's final decision to fall within the purview of the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2016)).

---

[1]This issue has not been addressed by the parties for purposes of this appeal.

10

¶ 26 In paragraph 25 of Penn's complaint in Peoria County case No. 16-MR-726, Penn alleged:

"To the extent the review of the Committee was authorized and required by the Administrative Review Law, *a point Mr. Penn challenges*, he has nonetheless exhausted all available administrative remedies under the Administrative Review Law and has no further plain, expeditious, or adequate remedy in the ordinary course of law." (Emphasis added.)

¶ 27 On January 12, 2017, Penn filed a motion to consolidate Peoria County case No. 14-MR-551 and Peoria County case No. 16-MR-726. The County opposed Penn's request for consolidation and filed a motion to set a briefing schedule and assign a hearing date to resolve Penn's motion to consolidate.

¶ 28 On February 2, 2017, the chief judge of the Tenth Judicial Circuit, *sua sponte*, granted Penn's motion to consolidate and assigned the consolidated case to another judge. On February 10, 2017, the court received a motion for reconsideration of the February 2, 2017, order consolidating the cases.

¶ 29 On February 13, 2017, while the County's motion for reconsideration of the consolidation order was still pending, the trial court issued a 22-page order reversing the Committee's August 31, 2016, decision. In this 22-page order, the court determined, as a matter of law, the minimum annual hours required for Penn's participation in IMRF as a county employee. The court found the 600-hour standard applied to Penn since Penn participated in IMRF before the requisite number of hours increased. The trial court also found that the Committee arbitrarily rejected evidence that Penn established he worked this minimum number of hours, if not more, for every month beginning December 1, 1984, through April 30, 2014.

¶ 30    In the course of administrative review in Peoria County case No. 16-MR-726, not in the context of the stayed declaratory action in Peoria County case No. 14-MR-551, the circuit court entered an order declaring that the Illinois Pension Code "mandates IMRF enrollment for public defenders meeting the standard of hours worked." Further, the court mandated the County "to sign, certify, and deliver IMRF forms 6.04 ("Application for Retroactive Service Credit"), 6.05 ("Omitted Service Credit Verification"), and 6.10 ("Notice of Enrollment in IMRF") and all other necessary IMRF forms as submitted by and on behalf of [Penn], to effectuate his enrollment into the [IMRF]."

¶ 31    On March 6, 2017, the County filed a notice of appeal in Peoria County case No. 16-MR-726. On March 14, 2017, the court granted the County's motion to stay enforcement of the trial court's February 13, 2017, decision, in Peoria County case No. 16-MR-726, pending the outcome of this appeal. In addition, the trial court dismissed the *mandamus* and declaratory judgment action, Peoria County case No. 14-MR-551, without prejudice, due to the pending appeal in Peoria County case No. 16-MR-726. On March 22, 2017, defendants filed an amended notice of appeal in Peoria County case No. 16-MR-726, to include the dismissal of Penn's *mandamus* and declaratory judgment action against the County without prejudice, Peoria County case No. 14-MR-551.

¶ 32    On December 15, 2017, this court requested supplemental briefing from the parties on jurisdictional issues that were not addressed in the initial appellate briefs. Subsequently, the parties filed supplemental briefing in accordance with this court's order.

¶ 33                                ANALYSIS

¶ 34    In 1968, Penn began a working relationship with the County that would last for many decades. During this lengthy period of time, the structure for Penn's working relationship with

the County varied. The parties agree that beginning in 1968 until December 1984, the County treated Penn as an ordinary county employee whom the County enrolled in IMRF.

¶ 35 In 1984, the County discontinued its IMRF contributions on Penn's behalf after Penn submitted his letter of resignation to the County. After his 1984 resignation as the public defender, Penn and the County negotiated multiple successive contracts that set forth the conditions for the ongoing professional relationship between Penn and the County. These successive contracts referred to Penn as an independent contractor. Pursuant to the contractual terms in each successive contract, Penn continued to act as the public defender from 1984 until his last day of service on April 30, 2014. Six days before Penn's contractual relationship with the County ended in 2014, Penn's attorney sent the 2014 letter to Van Beek, as an authorized agent for IMRF.

¶ 36 The 2014 letter from Penn's counsel stated:

"We ask that you *as the IMRF Authorized Agent for Peoria County* take forthwith all steps necessary to enroll Mr. Penn in the IMRF, including submission of IMRF Form 6.10 (Notice of Enrollment in IMRF). We also request that you sign and certify the Application for Retroactive Service Credit, IMRF Form 6.04, and the Omitted Service Credit Verification, IMRF Form 6.05, which are enclosed, and forward the completed forms to the IMRF." (Emphasis added.)

In the body of this letter, Penn's counsel asserted the County had the statutory obligation to immediately enroll Penn in IMRF, based solely on Penn's status as the acting public defender. In support of this demand, Penn's counsel quoted portions of section 5/7-109(c)(3) of the Illinois Pension Code. Penn's letter stated:

13

"All persons, including, without limitation, *public defenders* and probation officers, who receive earnings from general or special funds of a County for performance of personal services or official duties within the territorial limits of the county, are employees of the county…."

¶ 37 However, the County felt Penn's contractual status as an independent contractor and/or Penn's inability to document a minimum of 600 hours working annually for the County, excluded Penn as an eligible participating employee. On this basis, the County did not comply with the requests contained in the 2014 letter.

¶ 38 In a subsequent letter dated June 5, 2014, Penn's counsel responded to Van Beek's April 30, 2014, letter of refusal. In that letter Penn's counsel claimed that Penn's status as a County employee or as an independent contractor was "irrelevant" because IMRF "participation is mandatory for public defenders regardless of their contractual status." The County still refused to enroll Penn in IMRF.

¶ 39 Consequently, on August 13, 2015, Penn filed an amended complaint in Peoria County case No. 14-MR-551. In that action, Penn sought a declaratory ruling from the circuit court construing section 5/7-109(c)(3) of the Illinois Pension Code in Penn's favor and a directive for the County to enroll Penn in IMRF as of April 24, 2014. After Penn filed the amended complaint in Peoria County case No. 14-MR-551, Penn received the long awaited final decision from the County that unconditionally refused to enroll Penn in IMRF. According to the record, on December 18, 2015, the trial court stayed proceedings in Peoria County case No. 14-MR-551, after the trial court suggested that the process of exhausting Penn's administrative remedies would not be a lengthy process. On the same date, Penn's counsel summarized the purpose of the court's stay as follows:

"Yeah. So if we can get a decision that is from whoever the authorized agent that they claim it to be, *we can go to the IMRF* and they can either say this is not the right procedure, in which case we know we're not on the right procedure, or they can say, 'Great. Here's your [IMRF] hearing.' Or whatever. You know, we just need to get the piece of paper, which is either them—if they don't want to enroll—" (Emphasis added.)

¶ 40 Contrary to the trial court's optimistic prediction that Penn's administrative remedies could be exhausted in a relatively short time, it took eight months for Penn to obtain the final unequivocal refusal from the County that was issued in 2016. Yet, rather than approaching IMRF after the County's final refusal was clarified by the Committee's ruling, Penn decided to change course and take the Committee's ruling directly to the circuit court by seeking administrative review in Peoria County case No. 16 MR 726. In this new lawsuit, Penn asked the circuit court to review and set aside the County's final decision entered in August 2016.

¶ 41 The Illinois Constitution does *not* provide the circuit court with unlimited authority to review each and every final administrative decision. Ill. Const. 1970, art. VI, § 9. The Illinois Constitution states: "Circuit Courts shall have such power to review administrative action *as provided by law*." (Emphasis added.) *Id.*

¶ 42 A decision rendered by an administrative agency, such as the County in this case, which lacks jurisdiction over the subject matter or lacks the inherent power to make or enter the decision involved, is void and may be attacked at any time or in any court, either directly or collaterally. *Board of Education of the City of Chicago v. Board of Trustees of the Public Schools Teachers' Pension & Retirement Fund of Chicago*, 395 Ill. App. 3d 735, 739 (2009).

Unless the County had unquestionable subject matter jurisdiction to issue a binding administrative decision pertaining to Penn's IRMF eligibility according to the Illinois Pension Code, the County's 2014 decision would be void. If the County's 2014 decision was void, a valid decision from the County did not exist for the circuit court to review by the process of administrative review. Even though both parties to this appeal would like our court to reach the merits of Penn's IMRF eligibility after 1984, subject matter jurisdiction cannot be waived or consented to by the parties. See *Keller v. Walker*, 319 Ill. App. 3d 67, 70 (2001).

¶ 43    Illinois appellate courts have an independent duty to consider matters that go to the jurisdiction of the circuit court. *Baldwin v. Illinois Workers' Compensation Comm'n*, 409 Ill. App. 3d 472, 476 (2011). Mindful of this judicial obligation, we asked the parties to submit supplemental briefs addressing several jurisdictional concerns from our court.

¶ 44    In an administrative review case, we review the agency's decision, not that of the circuit court. *Doe Three v. Department of Public Health*, 2017 IL App (1st) 162548, ¶ 25. Initially, we state the obvious. The County, rather than the Committee, is the administrative agency that made the decision purportedly eligible for administrative review.[2] In addition, for housekeeping purposes, we identify the issue for our consideration in Peoria County case No. 16-MR-726 as follows: whether the County had the power or subject matter jurisdiction to render the final *administrative* decision construing a proper construction of several provisions in the Illinois Pension Code for purposes of establishing Penn's IMRF status after 1984.

¶ 45    The supplemental briefs have directed us to two sources of power for the County's subject matter jurisdiction to issue a decision construing the provisions of the Illinois Pension Code and then determining Penn's eligibility for IMRF enrollment after 1984. The first source of

---

[2]For the sake of argument, we presume the parties have correctly reached the conclusion that the County is an administrative agency as discussed in the supplemental briefs provided at the request of this court prior to oral arguments.

power is based on case law and the decision in *Baker v. County of Peoria*, 116 Ill. App. 3d 518 (1983). The second source of power is statutory and based on section 5-12012 of the Counties Code (55 ILCS 5/5-12012 (West 2016)). Both the decision in *Baker* and the statutory section 5-12012 of the Counties Code pertain to the administrative review of the decisions from a County's zoning boards of appeals. We agree the zoning board of appeals has the statutory authority to render a final decision from the County on certain zoning matters. However, this appeal does not involve a zoning decision issued by the County. Instead, this appeal focuses on whether the County has statutory authority to render a final decision concerning Penn's eligibility for IMRF coverage under the Illinois Pension Code, as needed for Penn to exhaust all administrative remedies. We conclude the authority submitted by the parties is pertinent to zoning decisions and has no applicability to the circumstances in this appeal.

¶ 46     We reiterate that an administrative agency, such as the Peoria County Board, only has the power to act as bestowed upon the County by the legislature. If an administrative agency, such as the County in this case, has acted outside its statutory authority, the administrative agency has acted *without* subject matter jurisdiction. See *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 243 (1989).

¶ 47     The outcome of this appeal is determined by our supreme court's guidance set forth in *Business & Professional People for the Public Interest*, 136 Ill. 2d at 192. In the context of administrative law, our supreme court observed that "jurisdiction" has the following three components: (1) the agency's authority over the parties involved in the proceedings, known as personal jurisdiction; (2) the agency's power "to hear and determine causes of the general class of cases to which the particular case belongs," known as subject matter jurisdiction, and (3) an

agency's scope of authority under the applicable statutes. (Internal quotation marks omitted.) *Id.* at 243.

¶ 48    The first jurisdictional consideration highlighted by our supreme court is easily resolved. There are no issues related to the personal jurisdiction over the parties for this court to consider. However, the second and third jurisdictional components identified by our supreme court are not as easily decided.

¶ 49    Every administrative agency is a creature of statute. Hence, the scope of any agency's authority is restricted to those actions specified by the legislature when creating the administrative agency. *Modrytzkji v. City of Chicago*, 2015 IL App (1st) 141874, ¶ 10. Neither party nor our own extensive legal research has discovered any statutory language in the Counties Code giving the County the power to make administrative decisions concerning IRMF participation and coverage. See 55 ILCS 5/5-12012 (West 2016).

¶ 50    However, most importantly, section 7-200 of the Illinois Pension Code (40 ILCS 5/7-200 (West 2016)) clearly states that the IMRF's Board of Trustees, not the County, shall have the power "[t]o carry on generally any other reasonable activities, including, *without limitation*, the making of administrative decisions on participation and coverage, which are necessary for carrying out the intent of this fund in accordance with the provisions of this Article." (Emphasis added.) See also *id.* §§ 7-120, 7-178, 7-200.

¶ 51    The legislature may "vest original jurisdiction in an administrative agency when it enacts a comprehensive statutory scheme that creates rights and duties that have no counterpart in the common law or equity." (Internal quotation marks omitted.) *Topinka v. Kimme*, 2017 IL App (1st) 161000, ¶ 9. Based on our reading of the plain language of article 7 of the Illinois Pension Code, as a whole, we conclude that the legislature created a very comprehensive statutory

18

scheme concerning municipal retirement benefits. Examples of this comprehensive scheme are briefly discussed below.

¶ 52    Section 7-178 of the Illinois Pension Code (40 ILCS 5/7-178 (West 2016)) provides that the IMRF's Board of Trustees "shall have the powers and duties stated in Sections 7-179 to 7-200." Further, section 7-200 of the Illinois Pension Code (*id.* § 7-200) states that the Board shall have the power "[t]o carry on generally any other reasonable activities, including, *without limitation*, the making of administrative decisions on participation and coverage, which are necessary for carrying out the intent of this fund in accordance with the provisions of this Article." (Emphasis added.) Further, the Board also has the power to request any necessary information from a participating municipality. *Id.* § 7-183. Each participating municipality may appoint an authorized agent who has the power to "certify to the fund whether or not a given person is authorized to participate in the fund." *Id.* § 7-135(b)(1).

¶ 53    Finally, the IMRF's enabling legislation *expressly* provides that "[t]he provisions of the Administrative Review Law, and all amendments and modifications thereof and the rules adopted pursuant thereto shall apply to and govern all proceedings for the judicial review of final administrative decisions of the retirement board." *Id.* § 7-220 (West 2016). On December 18, 2015, after a lengthy debate and discussion, a consensus arose between the trial court and the parties that Penn's administrative remedies would not be exhausted until Penn obtained a final administrative decision from the IMRF Board of Trustees. Everyone seemed to recognize that Penn must exhaust all administrative remedies before the circuit court could turn to the merits of the declaratory action in Peoria County case No. 14-MR-551. Consequently, on December 18, 2015, the trial court put the declaratory action on hold until Penn exhausted his administrative

19

remedies by first getting a decision from the County and then getting the final administrative decision from another agency, the IMRF.

¶ 54 After carefully reading the Illinois Pension Code as a whole, we conclude the trial court correctly recognized that the statutory scheme wisely vested IMRF, rather than a participating municipality such as the County, with original subject matter jurisdiction to make administrative decisions on IMRF participation and coverage. Thus, we hold that a participating municipality, such as the County in this case, has no subject matter jurisdiction to render a final administrative decision addressing Penn's eligibility for IMRF participation and coverage.

¶ 55 As further support for this holding, we rely on the decision in *Wabash County v. Illinois Municipal Retirement Fund*, 408 Ill. App. 3d 924, 929 (2011). This decision holds that it is the duty of the IMRF's Board of Trustees to make administrative decisions regarding participation and coverage for IMRF purposes and clarifies that a participating municipality has *no* authority to determine who is an IMRF eligible employee.

¶ 56 Finally, Penn raises a novel, but unpersuasive argument, concerning judicial economy. Penn contends that it is clear from this record that the trial court would reach the same conclusion in Peoria County case No. 14-MR-551 following remand from this court. On this basis, Penn argues it would be a waste of judicial time and resources for this court not to resolve the core issue concerning Penn's IMRF eligibility for enrollment after 1984 due to a procedural technicality. We disagree.

¶ 57 The case law provides that when a participating municipality conducts a hearing regarding a claimant's eligibility for pension benefits under the IMRF, the IMRF's Board of Trustees *will not be bound* by the municipality's findings of fact and may make its own determination of IMRF eligibility. See *Klomann v. Illinois Municipal Retirement Fund*, 284 Ill.

20

App. 3d 224, 227-30 (1996). If another agency, such as the County, has concurrent subject matter jurisdiction to interpret article 7 of the Illinois Pension Code, it is foreseeable that the County and IMRF could reach opposite conclusions. Under such circumstances, the circuit court could then be requested to conduct administrative review of each agency's final decision based on different records developed before each administrative agency. This result is not consistent with judicial economics. Given that the IMRF has not weighed in on the issue of whether Penn is a County "employee" for IMRF purposes, let alone rendered a "final" administrative decision, we conclude that judicial economics are well served by our holding that the Illinois Pension Code vests IMRF as the administrative agency with *original* and exclusive subject matter jurisdiction to issue the final decision regarding whether Penn has a valid claim for IMRF retirement benefits.

¶ 58 Paragraph 5.70 of the 2015 IMRF Manual for Authorized Agents includes a very detailed summary of the procedural process claimants should follow following an adverse determination of a claim for IMRF coverage or participation. See Ill. Mun. Ret. Fund, Manual for Authorized Agents § 5.70 (Jan. 2014), https://www.imrf.org/AAmanual/Online_AA_Manual/aamanual.htm. This multi-layered process of review culminates in an action for administrative review of the IMRF's final determination.

¶ 59 In conclusion, we vacate the circuit court's February 13, 2017, ruling in Peoria County case No. 16-MR-726, on the grounds that the County's decision is void because the County lacked subject matter jurisdiction to issue a *final* administrative decision concerning Penn's eligibility for IMRF enrollment and retirement benefits according to the statutory language of the Illinois Pension Code. We direct the circuit court to dismiss the complaint in Peoria County case No. 16-MR-726 after remand. With respect to Peoria County case No. 14-MR-551, the trial

21

court's order dismissing the complaint without prejudice on March 14, 2017, stands because the issue has not been addressed by the parties on appeal before this court.

¶ 60                                    CONCLUSION

¶ 61        The judgment of the circuit court of Peoria County is vacated and the cases involved in this appeal are remanded to the circuit court for further action consistent with the ruling.

¶ 62        Vacated and remanded.